**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **LORENE G. BROCIOUS,** ***as Personal Representative of the Estate of*** **JAMES COPPAGE,** | : | |
| **Plaintiff** | : | |
| v. | : | **Case No.: 1:18-cv-03823-SAG** |
| | : | **Judge Stephanie A. Gallagher** |
| **UNITED STATES STEEL CORPORATION, et al.** | : | |
| **Defendants** | : | |

**DEFENDANT UNITED STATES STEEL'S**
**MOTION TO EXCLUDE PLAINTIFF'S EXPERT ROBERT HERRICK**

United States Steel Corporation ("United States Steel"), pursuant to Federal Rule of Civil Procedure 702, moves this Honorable Court to exclude Plaintiff's expert, Robert Herrick, from testifying as his opinions are based on unreasonable and baseless assumptions. In support, Defendant states as follows:

## I. Nature of the Case

This case arises out of Plaintiff's allegations that James Coppage ("Coppage") was exposed to benzene containing products produced and sold by the Defendants. At issue is whether he contracted a disease caused by benzene exposure. Despite allegations that Coppage during his career as a pressman used various chemical solvents and inks, no direct evidence exists identifying the specific products used at each of Coppage's employers. In fact, Coppage admitted that he had no recollection or knowledge of the particular products he used.

On November 2, 2018, Coppage filed a five-count complaint in the Circuit Court for Baltimore City against multiple defendants alleging that Defendants were liable for placing their products in the stream of commerce. Doc. 1-2. Defendants removed the case to this Court pursuant

to 28 U.S.C. § 1441. Doc. 1. On January 25, 2019, this Court entered an Amended Scheduling Order requiring Plaintiff to designate his experts by June 17, 2019. Doc. 106.

On the day that Plaintiff's expert designation was due, Plaintiff's attorney sent an email to all Defendants requesting consent to extend the disclosure deadline by 30-days. Ex. 1. On July 16, 2019, almost a month after their disclosures were due, Plaintiff filed a Motion to Extend Amended Scheduling Order Deadlines by 60 days to permit Plaintiff to file his already untimely expert disclosures. Doc. 126. Several of the Defendants, including United States Steel, opposed Plaintiff's Motion citing his failure to comply with this Court's local rules, failure to state any basis for the delay, and failure to timely file his Motion. Doc. 127. On August 6, 2019, this Court granted Plaintiff's Motion to Extend discovery deadlines and required Plaintiff's to disclose his experts by August 16, 2019. Doc. 131.

On August 16, 2019, Plaintiff emailed his expert disclosure to Defendants noting two experts, Dr. David Zhang and Dr. Robert Herrick. Herrick, an industrial hygienist, who was retained to assess Coppage's alleged cumulative exposure to benzene from Defendants' products. Ex. 3 P. 87 L. 9-21. In his report, Herrick, unable to rely on plaintiff's own testimony[1], relied on Robert Stalling's testimony[2] that Coppage's employers News American and Baltimore Sun used three solvents prior to 1977[3] which were manufactured or sold by U.S. Printing Ink, Sun Chemical Co. and Hanco. Ex. 2 p. 8. Herrick assumed, without any basis in fact, that one of the solvents

[1] One product that Herrick considered for his cumulative exposure assessment was a general-purpose cleaning solvent that Coppage said he used at the Baltimore Sun and the News-American, two of his work locations. Coppage did not identify that solvent by chemical name. Ex. 3 P. 22 L. 24 to P. 23 L. 1-2. Coppage did not identify the solvent by product name. Ex. 3 P. 23 L. 3-5. Coppage did not identify the solvent by brand name. Ex. 3 P. 23 L. 6-8. Coppage said the solvent was clear. Ex. 3 P. 23 L. 9-11.

[2] The Stallings deposition was taken in an unrelated case on April 14, 2009, more than ten years ago.

[3] Hancolite no longer contained benzene as an ingredient after 1977. Ex. 2 p. 25 (citing Charles Graham's Deposition, the relevant excerpt of which is attached as Ex. 7 to this Motion for the Court's convenience).

was Hancolite, one formula of which had a 50% benzene content until the late 1970's. Herrick further assumed, without any basis in fact, that the other two unidentified solvents contained 50% benzene Ex. 2 p. 24.

In his report, Herrick provided no basis for his assumptions other than citing to the deposition of Charles Graham, an employee of Defendant Handschy.[4] Ex. 2 p. 24 n. 184. Mr. Graham's testimony, however, described the benzene content of a specific Handschy product, Hancolite, and neither Coppage nor Stallings identified Hancolite as the product used at Plaintiff's employers. Ex. 3 P. 22 L. 24 to P. 23 L. 1-2, P. 23 L. 3-5, P. 23 L. 6-8, P. 31 L. 10-15, P. 33 L. 14-18, P. 36 L. 3-13, P. 36 L. 23-24 to P. 37 L. 1-6, P. 45 L. 16-18. Herrick provided no other explanation in his report as to the basis of his assumptions that Hancolite was used by Coppage's employers or as to the benzene content of the other two solvent products used by Coppage during his employment.

As a result, Defendants deposed Herrick to determine, among other things, the foundation for the opinions made in his report and Defendant United States Steel noted Herrick's deposition for November 21, 2019 at 9:00 a.m. Ex. 4. Three minutes before the start of Herrick's deposition, Plaintiff's attorney emailed to all Defendants a DropBox link identified as Herrick's file, which contained over one thousand pages of documents. Ex. 5. Despite the Notice of Deposition requiring Herrick to appear with his file materials, Herrick did not have any of the DropBox documents at his deposition, and was unable to respond to inquiries regarding several documents contained in the Dropbox file, including having no recollection of when he received them or whether he received them before or after he wrote his report. Ex. 3 P. 136 L. 9-24 to P. 137 L. 1-17; P. 144 L. 10-24 to P. 145 L. 1-3; P. 162 L. 2-15.

---

[4] The Graham deposition was taken in an unrelated case on July 15, 2010, more than nine years ago.

The only documents Herrick brought to his deposition were four pages of previously unproduced notes. Ex. 6. According to Herrick, these notes were written by him in anticipation of the types and kinds of questions that he thought he would be asked at his deposition, which he testified he did not anticipate at the time he prepared his report. Ex. 3 P. 11 L. 7-24 to P. 13 L. 1-20. The first page of these notes indicate that Herrick conducted an interview the day before his deposition with one of Coppage's former co-workers, Walter Southworth. Ex. 6 p. 1. The remaining three pages focus entirely on an unavailing attempt to justify Herrick's assumption that all three of the solvents used by Coppage contained 50% benzene. Ex. 6 p. 2-4. None of this information was referenced or discussed in Herrick's original report. Herrick did not reference in his report that he needed additional information nor that he intended to supplement his opinions, and Plaintiff's counsel likewise failed to advise Defendants accordingly.

Notwithstanding that Herrick's alleged "supplement" should be struck as improper under the Federal Rules, Herrick had no basis for his assumption of the benzene content of the solvents used by Coppage. In fact, Herrick improperly disregarded the testimony of Coppage as well as Stallings without any explanation in determining that Hancolite was used at Coppage's former employer prior to 1977. Similarly, Herrick had no basis to assume the benzene content of the other two solvents allegedly used by Coppage, as there is no evidence identifying those products. As such, Herrick's testimony is not based on valid scientific principles but rather assumptions and conjecture, and he should be precluded from testifying at trial in this matter.

## II. Argument

Centuries ago, Swiss physician and chemist Paracelsus expressed the basic principle of toxicology: "All things are poison and nothing is without poison; only the dose makes a thing not a poison," which quote is commonly concisely stated: "The dose makes the poison." In simple

terms, a substance that contains toxic properties can cause harm only if it occurs in a high enough concentration. "In toxic tort cases, in order to carry the burden of proving a plaintiff's injury was caused by exposure to a specified substance, the plaintiff must demonstrate the levels of exposure that are hazardous to human beings generally as well as plaintiff's actual level of exposure." Zellers v. NexTech Northeast, LLC, 533 Fed. Appx. 192, 196 (4th Cir. 2013). "Generally, this must be done through the use of relevant and reliable expert testimony." Id.

Pursuant to Federal Rule of Evidence 702, an expert witness' testimony must be "based on sufficient facts or data" as well as be "the product of reliable principles and methods." Fed. R. Evid. 702. Plaintiff has the burden of proof to establish that her expert's opinions satisfy the elements of the rule. See Cooper v. Smith & Nephew, Inc., 259 F. 3d 1294, 199 (4th Cir. 2000) ("The proponent of the testimony must establish its admissibility"). Similarly, "a district court considering the admissibility of expert testimony exercises a gatekeeping function to assess whether the proffered evidence is sufficiently reliable and relevant." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999). The district court must be mindful that expert witnesses have the potential to "be both powerful and quite misleading" and should exclude an expert's testimony when it "has a greater potential to mislead than to enlighten" the jury. Id.

Specifically, "an expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record." Tyger Constr. Co. v. Pensacola Constr. Co., 29 F.3d 137, 142 (4th Cir. 1994). The Court should exclude an expert who "cherry-picked facts" consistent with his opinion as such a "selective use of facts fails to satisfy the scientific method and *Daubert* standard." Barber v. United Airlines, Inc., 17 Fed. Appx., 433, 437 (7th Cir. 2001). Therefore, for the Court to permit an expert to testify, the expert must show that his

conclusions and assumptions were based on more than a mere guess, conjecture, or random judgment. Stokes v. Geismar, 815 F. Supp. 904, 909 (E.D. Va. 1993).

Here, Herrick used the near field/far field model to complete his cumulative exposure assessment for the solvents that Coppage allegedly used at his employment at the Baltimore Sun and the News American. Ex. 3 P. 43 L. 14-19. An important factor for the use of that model is the benzene emission rate. Ex. 3 P. 43 L. 20-23. In order to calculate the benzene emission rate, Herrick was required to know the benzene content of the products used by Coppage during his employment. Ex. 3 P. 43 L. 24 to P. 44 L. 1-3. Herrick admitted that an incorrect assumption as to the benzene content contained in the products used by Coppage would render his conclusions as to Coppage's cumulative exposure incorrect. Ex. 3 P. 51 L. 13-24 to P. 52 L. 1-4. As the benzene content of solvents vary by specific products, the proper identification of the solvents used at Coppage's employers was essential to calculate Coppage's cumulative exposure. Ex. 3 P. 127 L. 10-20, P. 132 L. 9-24.

**A. Herrick's Conclusion That Coppage Used Hancolite Is Based On Unsupported Assumptions That Patently Ignore Evidence Without Explanation**

Herrick's assumption that Coppage's employers used the solvent Hancolite is without basis in fact, flawed, and contradictory to the evidence. Herrick admitted that Coppage did not identify Hancolite as a solvent used at his employers, as Coppage could not recall the chemical name, the product name, nor the brand name of any solvents. Ex. 3 P. 22 L. 24 to P. 23 L. 1-2, P. 23 L. 3-5, P. 23 L. 6-8. Stallings[5] testified as to the qualities of the product, its uses, and its feature when it came into contact with skin. Herrick relied on this testimony and a Handschy product guide to conclude at his deposition for the first time that Hancolite was the solvent used by Coppage's

[5] Stallings worked at various times at the Baltimore Sun and the News-American. There is no evidence in the record that Stallings ever worked with Mr. Coppage at the same location at the same time. Ex. 3 P. 26 L. 15-23.

employers, even though he made no mention of this analysis in his initial report. Ex 3 P. 14 L. 24 to P. 15 L. 1-18. It is important that despite being shown the Handschy product guide, Stallings never identified the solvent by product name or product number. Ex. 3 P. 31 L. 10-15 and P. 36 L. 3-13. To the contrary, he said in his deposition that he could not do so; a fact that Herrick was forced to acknowledge at his deposition. Ex. 3 P. 36 L. 23-24 to P. 37 L. 1-6. Herrick also ignored relevant evidence from both Coppage and Stallings that eliminated Hancolite as the product used by Coppage's employers. Ex. 6. Specifically, Coppage testified that the solvent used at his employers was clear. Stallings similarly testified that the solvents used were always clear and not readily distinguishable from one another. Hancolite, however, was dyed purple for the purposes of distinguishing it from other products on the market. Ex. 3 P. 23 L. 9-8, P. 33 L. 14-18, P. 35 L. 16-24 to P. 36 L. 1-2, P. 52 L. 6-24 to P. 53 L. 1-6, P. 54 L. 1-3, P. 54 L. 4-6, P. 58 L. 8-19, P. 268 L. 17-24 to P. 269 L. 1-19. When confronted with the inconsistency between his conclusions and Coppage's and Stallings' testimony as to the color of Hancolite, Herrick testified that he assumed that both Coppage and Stallings were both incorrect in their recollection as to the color of the solvent and that he did not find their testimony on the subject credible. Ex. 3 P. 53 L. 15-24 to P. 55 L. 1-13.

Under *Daubert*, Herrick cannot embrace certain portions of both Coppage's and Stallings' depositions, including the company that sold the product, its uses, the delivery method, the fact it was stored in fifty-five gallon drums, and how it interacted with an individual's skin, to identify the product allegedly used while ignoring contrary evidence that would undermine his preconceived notions. Herrick provided no basis as to why the color of the solvent, to which both Coppage and Stallings testified, was any less credible than the other testimony provided by both individuals. Herrick's selective use of testimony of some but not all of Stallings' and Coppage's

testimony without a reasonable and objective criterion for evaluating it fails to meet the scientific method required by this Court's precedent, *Daubert*, and FRE 702. Therefore, Herrick's conclusion that Hancolite was used by Coppage and that the solvents used by Coppage's employers contained 50% benzene content was unreasonable, and his estimate of Coppage's cumulative benzene exposure is not based on a sufficient factual basis to permit him to testify as an expert at trial.

### B. Herrick Had No Basis To Assume That The Other Two Solvents Used At Coppage's Employer Prior To 1977 Also Contained 50% Benzene

Even if this Court determines that Herrick could assume that Hancolite was the solvent provided by Handschy, Stallings testified that Coppage's employers used three different solvents with the other two solvents being provided by Defendants U.S. Printing Inks and Sun Chemicals. Ex. 3 P. 22 L. 17-24 to P. 23 L. 1-11, P. 31 L. 10-15, P. 33 L. 14-18, P. 36 L. 3-13, P. 36 L. 23-24 to P. 37 L. 1-6. Stallings could not identify these products by their name or product number. Ex. 3 P. 33 L. 14-18, P. 36 L. 3-13. Moreover, there is no evidence that U.S. Printing Inks or Sun Chemicals sold a chemical solvent prior to 1977 which contained benzene, let alone a 50% benzene content. Herrick further testified that:

> Q. Do you know the benzene content of the U.S. Printing Ink solvent that Mr. Coppage used prior to 1977?
>
> A. There wasn't direct information in the record.

Ex. 3 P. 61 L. 14-18. Similarly, Herrick admitted that he "did not remember seeing" any evidence as to the benzene content of the Sun Chemical solvent in the record. Ex. 3 P. 62 L. 3-23. In fact, Herrick's sole basis for assuming that these solvents contained 50% benzene was simply because Stallings testified that he used the solvents interchangeably based on whichever one was available

at the time and that according to Herrick, it was therefore "reasonable" to assume that all three solvents had the same composition. Ex. 3 P. 61 L. 14-24 to P. 62 L. 1-2.

However, Herrick admitted that "there could have been a wide range of benzene contents in those cleaners" when discussing the potential benzene contents of various solvents. Ex. 3 P. 130 L. 24 to P. 131 L. 1-9. Similarly, Herrick provided no evidence to support his assumption that a 50% benzene content was necessary for the cleaners to perform the same function or to be used for the same purpose as Hancolite. Herrick acknowledged that he would "have to know the constituents of that solvent . . . to be able to answer the question as to what percentage, if any, of benzene was in that product." Ex. 3 P. 132 L. 9-24.

Herrick's assumption as to the benzene content of the two solvents lacks support in the record and is based on unreasonable speculation. Herrick had no direct evidence to support his conclusion as to the benzene content of the solvents provided by U.S. Printing Inks and Sun Chemicals and his conclusion that they contained 50% benzene was merely a guess. Furthermore, Herrick provided no evidence, research, or studies to support the contention that his assumption was reasonable. The amount of benzene in these solvents is material to estimating Coppage's cumulative benzene exposure because Stallings testified that these two solvents were used approximately 70% to 75% of the time. Ex. 3 P. 31 L. 2-9, P. 51 L. 13-24 to P. 52 L. 1-4.

In sum, Herrick's opinions fail to meet the standard set forth by the Supreme Court in *Daubert* as Herrick's opinions are unreliable. Herrick, who was tasked with opining as to Coppage's alleged cumulative exposure to benzene from Defendants' products, used a model to calculate Coppage's exposure that relied on the benzene emission rate, which required accurate information as to the benzene content of the solvents used by Coppage's employers. Herrick admitted that there is no direct evidence of the benzene content in the solvents used by Coppage's

employers, and that he made assumptions that one product was Hancolite and that the other two solvents had the same benzene content as Hancolite. Both assumptions, for reasons stated above, are not supported by the evidence and are baseless. As the accuracy of these factors is essential to render an opinion as to Coppage's cumulative exposure, Herrick's opinions lack reliability sufficient to survive this *Daubert* challenge.

WHEREFORE, for the reasons set forth above, Defendant United States Steel respectfully requests that this Motion be granted and that this Court strike Robert Herrick as an expert and preclude him from testifying as to Coppage's cumulative exposure.

This the _4th_ day of December 2019:

Respectfully submitted,

**BUDOW AND NOBLE, P.C.**

*/s/ Laura Basem Jacobs, Esq.*
Laura Basem Jacobs, Esq., Bar # 03142
Twinbrook Metro Plaza
12300 Twinbrook Parkway, Suite 540
Rockville, Maryland 20852
(301) 654-0896 telephone
(301) 907-9591 facsimile
LJacobs@BudowNoble.com
*Counsel for Defendant United States Steel Corporation*

**THE CAIRONE LAW FIRM PLLC**

*/s/ Matthew Cairone, Esq.*
Matthew Cairone, Esq.
PMB 58
1900 Main Street, Suite 107
Canonsburg, Pennsylvania 15317
(724) 416-3261 telephone
mcc@caironelawfirm.com
*Counsel for Defendant United States Steel Corporation*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of December, 2019, a copy of the foregoing Motion to Exclude Plaintiff's Expert, Robert Herrick was filed and served via the Court's CM/ECF system on:

Andrew J. DuPont, Esq.
Timothy A Burke, Esq.
Locks Law Firm
601 Walnut Street, Suite 720E
Philadelphia, PA 19106
Tel: (215) 893-0100
Fax: (215) 893-3444
tburke@lockslaw.com
adupont@lockslaw.com
**Counsel for Plaintiff**

Stephen J. Nolan, Esq.
Smith, Gildea & Schmidt, LLC
600 Washington Avenue, Suite 200
Towson, Maryland 21204
Tel: (410) 821-0070
Fax: (410) 821-0071
snolan@sgs-law.com
Counsel for Plaintiff James Coppage

Thomas J. Cullen, Jr. Esq.
Erica W. Magliocca, Esq.
Ericka L. Downie, Esq.
Goodell, DeVries, Leech & Dann LLP
One South Street, 20th Floor
Baltimore, MD 21202
Tel: (410) 783-4000
Fax: (410) 783-4040
tjc@gdldlaw.com
ewm@gdldlaw.com
edownie@gdldlaw.com
**Counsel for Sun Chemical Corporation and Rycoline Products, Inc., a Division of Sun Chemical Commercial Group, a/k/a Rycoline Products, LLC, and Successor to Rogersol, Inc., and BASF Corporation**

Eric P. Weiss, Esq.
Murchison & Cumming LLP
801 South Grand Avenue, 9th Floor
Los Angeles, CA 90017
Tel: (213) 623-7400
Fax: (213 623-6336
Eweiss@murchisonlaw.com
**Counsel for Fujifilm Hunt Chemicals USA, Inc.**

Jonathan A. Singer, Esq.
Nelson Mullins Riley & Scarborough LLP
100 S. Charles Street, Suite 1200
Baltimore, MD 21201
Tel: (443) 392-9409
Fax: (443) 392-9499
Jon.singer@nelsonmullins.com
**Counsel for Fujifilm Hunt Chemicals USA, Inc.**

Jeffrey R. DeCaro, Esq.
Adam D. Perrelli, Esq.
DeCaro Doran Siciliano Gallagher & DeBlasis LLP
17251 Melford Boulevard, Suite 200
Bowie, Maryland 20715
Tel: (301) 352-4950
Fax: (301) 352-8691
jdecaro@decarodoran.com
jliskow@decarodoran.com
pmoon@decarodoran.com
aperrelli@decarodoran.com
**Counsel for T.H. Agriculture and Nutrition, LLC and Harcros Chemicals, Inc.**

Joseph Duffy, Esq.
Morgan Lewis & Bockius LLP
300 South Grand Ave., 22nd Floor
Los Angeles, CA 90071
Tel: (213) 612-7378
Fax: (213) 612-2501
Joseph.duffy@morganlewis.com
**Counsel for Phillips North America LLC f/k/a Philips Electronics North America Corporation**

Steven A. Luxton, Esq.
Morgan Lewis & Bockius LLP
1111 Pennsylvania Ave. NW
Washington, DC 20004
Tel: (202) 739-5452
Fax: (202) 739-3001
Steven.luxton@morganlewis.com
**Counsel for Phillips North America LLC f/k/a Philips Electronics North America Corporation**

Aaron A. Arthur, Esq.
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Tel: 215-963-5498
Fax: 215-963-5001
Aaron.arthur@morganlewis.com

Benjamin D. Schuman, Esq.
John R. Wellschlager, Esq.
John E. Griffith, Jr., Esq.
Darryl L. Tarver, Esq.
DLA Piper LLP
The Marbury Building - 6225 Smith Avenue
Baltimore, Maryland 21209
Tel: (410) 580-3000
Fax: (410) 580-3001
ben.schuman@dlapiper.com
ben-schuman-8302@ecf.pacerpro.com
lauren.mullins@dlapiper.com
john.wellschlager@dlapiper.com
john.griffith@dlapiper.com
Darryl.tarver@dlapiper.com
**Counsel for BASF Corporation**

Steven Lucks, Esq.
Andrew Fishkin, Esq.
David P. Lodge
Fishkin Lucks, LLP
One Riverfront Plaza, Suite 410
Newark, NJ 07102
Tel: (215) 607-2501
Fax: (973) 536-2800
slucks@fishkinlucks.com
afishkin@fishkinlucks.com
dlodge@fishkinlucks.com
**Counsel for Ashland, LLC and Union Oil Company of California**

Damien Weinstein, Esq.
Fishkin Lucks LLP
One Riverfront Plaza, Suite 410
Newark, NJ 07102
Tel: (973) 679-4435
dweinstein@fishkinlucks.com
**Counsel for Ashland, LLC and Union Oil Company of California**

Theodore F. Roberts, Esq.
Scott M. Richmond, Esq.
Venable LLP
210 W. Pennsylvania Ave., Suite 500
Towson, MD 21204
Tel: 410.494.6344
tfroberts@Venable.com
kefox@venable.com
kmgriffin@venable.com
rdelgrosso@venable.com
smrichmond@venable.com
**Counsel for Varn International, Inc.**

Stan Perry, Esq.
Reed Smith
811 Main Street, Suite 1700
Houston, TX 77002
Tel:(713) 469-3800
Fax: (713) 469-3899
sperry@reedsmith.com
**Counsel for Shell Oil Company and Shell Oil Products US, Inc.**

Michael B. Roberts, Esq.
Reed Smith
1301 K Street, N.W., East Tower, Suite 1000
Washington, D.C. 20005
Tel: (202) 414-9288
Fax: (202) 414-9299
mroberts@reedsmith.com
**Counsel for Shell Oil Company and Shell Oil Products US, Inc.**

Audrey M. Gariepy-Bogui, Esq.
Reed Smith LLP
1301 K Street, NW
Suite 1000 – East Tower
Washington, DC 20005
Tel: 202-414-9251
Fax: 202-414-9299
agariepy@reedsmith.com
**Counsel for Shell Oil Company and Shell Oil Products US, Inc.**

Joshua M. Peles, Esq.
Reed Smith LLP
Three Logan Square, 1717 Arch Street
Suite 3100
Philadelphia, PA 19103
Tel: 215 851 8287
Fax: 215 851 1420
jpeles@reedsmith.com
**Counsel for Shell Oil Company and Shell Oil Products US, Inc.**

Kyle LeClere, Esq.
Barnes & Thornburg, LLP
11 South Meridian Street
Indianapolis, IN 46204
Tel: (317) 231-6475
Fax: (317) 231-7433
Kyle.leclere@btlaw.com
**Counsel for Flint CPS Inks North America LLC**

Matthew J. McCloskey, Esq.
Paul N. Farquharson, Esq.
Stephen Salvatore McCloskey, Esq.
Semmes, Bowen & Semmes
25 South Charles Street , Suite 1400
Baltimore, MD 21201
Tel: (410) 539-5040
Fax: 410-539-5223
Email: mmccloskey@semmes.com
pfarquharson@semmes.com
bnichols@semmes.com
smccloskey@semmes.com
kguth@semmes.com
**Counsel for Union Oil Company of California and Ashland, LLC**

Matthew Cairone, Esq.
The Cairone Law Firm PLLC
PMB 58
1900 Main Street, Suite 107
Cannonsburg, PA 15317
Tel: 724-416-3261
mcc@caironelawfirm.com
**Counsel for United States Steel Corporation**

Deborah C. Prosser, Esq.
Kutak Rock LLP
777 S. Figueroa St., Suite 4550
Los Angeles, CA 90017-5800
T: 213-312-4023
Fax: 213-312-4001
Deborah.Prosser@KutakRock.com
**Counsel for Graphic Packaging International, LLC f/k/a Graphic Packaging International, Inc., and Handschy Industries, Inc.**

Jennifer M. Blunt, Esq.
Kutak Rock LLP
1625 Eye Street, N.W., Suite 800
Washington, D.C. 20006-4061
Tel: (202) 828-2421
Fax: (202) 828-2488
Jennifer.Blunt@KutakRock.com
**Counsel for Graphic Packaging International, LLC f/k/a Graphic Packaging International, Inc., and Handschy Industries, Inc.**

Linda S. Woolf, Esq.
Constantine J. Themelis, Esq.
Goodell DeVries Leech & Dann, LLP
One South Street, 20th floor
Baltimore, MD 21202
Tel: 410-783-4000
Fax: 410-783-4040
lsw@gdldlaw.com
cthemelis@gdldlaw.com
**Counsel for Flint CPS Inks North America LLC**

Kevin Dale Rising, Esq.
Barnes and Thornburg LLP
2029 Century Park East
Suite 300
Los Angeles, CA 90067
Tel: (310) 284-3880
Fax: (310) 284-3894
Kevin.rising@btlaw.com
**Counsel for Flint CPS Inks North America LLC**

Brendan H. Fitzpatrick, Esq.
Jessica P. Butkera, Esq.
Thomas P. Bernier, Esq.
Goldberg Segalla LLP
One North Charles Street, Suite 2500
Baltimore, MD 21201
Tel: 443-615-7513
Fax: 443-615-7599
bhfitzpatrick@goldbergsegalla.com
jbutkera@goldbergsegalla.com
tbernier@goldbergsegalla.com
**Counsel for EMCO Chemical Distributors, Inc.**

/s/
Laura Basem Jacobs, Esq., Bar # 03142
Budow and Noble, P.C.
Twinbrook Metro Plaza
12300 Twinbrook Parkway, Suite 540
Rockville, Maryland 20852
(301) 654-0896 telephone
(301) 907-9591 facsimile
LJacobs@BudowNoble.com
*Counsel for Defendant United States Steel Corporation*