# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LORENE G. BROCIOUS, as Personal Representative of the Estate of JAMES COPPAGE<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES STEEL CORP., *et al.*,<br><br>Defendants. | Civil Case No. SAG-18-3823 |

## MEMORANDUM OPINION

Plaintiff Lorene G. Brocious ("Plaintiff"), as Personal Representative of the Estate of her deceased husband, James Coppage, maintains this lawsuit against various manufacturers and producers of benzene-containing products (collectively, "Defendants"). ECF 1-4. One of the Defendants, United States Steel Corporation ("United States Steel") filed the instant Motion for Summary Judgment on Statute of Limitations Only ("the Motion"), representing that the other Defendants join in the Motion and the requested relief. ECF 141. I have reviewed the Motion, along with Plaintiff's Opposition, and United States Steel's Reply. ECF 149, 150. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, I will grant the Motion in part and deny it in part.

## I.     FACTUAL BACKGROUND

James Coppage worked as a pressman for various newspapers and printing companies for over more than forty years. ECF 141-3 at 12:20-16:24 (Coppage Dep.). His job required extensive interaction with inks and chemical solvents. *See, e.g.*, *id.* at 18:11-20, 20:1-25:16, 31:1-21, 32:2-39:7.

In 2012, Plaintiff's routine blood work showed elevated white blood cell counts. *Id.* at 84:11-85:20. His primary physician referred him to a hematologist/oncologist, Dr. Richard Schraeder. *Id.*; ECF 141-4 at 15:2-11 (Dr. Schraeder Dep.). On May 11, 2012, during an appointment with Dr. Schraeder, Dr. Schraeder noted Coppage's former employment and his exposure to petroleum products. ECF 149-2 at 76 (Ex. E at 2). Dr. Schraeder testified that he typically asks patients with potential leukemia or myelodysplasia about their work exposure history. ECF 141-4 at 19:14-21. He does not generally advise patients to investigate their increased risk of such conditions, and does not recall any particular discussion with Coppage about his chemical exposure. *Id.* at 19:22-20:18. Dr. Schraeder ordered a bone marrow biopsy to determine a more precise primary diagnosis, but the results were inconclusive. *Id.* at 35:8-18. Dr. Schraeder referred Coppage to Dr. Bruce Smith, an oncologist at Johns Hopkins. *Id.* Dr. Schraeder's report noted, "Overall, the findings are suspicious for a myeloproliferative disorder, such as chronic myelogenous leukemia." ECF 141-5 at 2.

On June 25, 2012, Dr. Smith met with Coppage, and advised him that he had a "bone marrow failure disorder." ECF 149-2 at 72 (Ex. D at 54:3-55:2) (Dr. Smith Dep.). Again, Dr. Smith's notes reflect Coppage's chemical exposure during his employment as pressman for the Baltimore Sun, ECF 149-2 at 79 (Ex. F at 3), but Dr. Smith does not recall whether Coppage told him that information directly, or whether he reiterated information he had learned from Dr. Schraeder's records, ECF 149-2 at 71 (Ex. D at 15:12-16:19). Dr. Smith does not recall whether he discussed potential causes of bone marrow failure disorder with Coppage. *Id.* at 55:3-56:7. Because Coppage was generally healthy in 2012, Dr. Smith suggested continued monitoring of Coppage's blood levels. *Id.* at 57:21-24. Dr. Smith's notes state, "Bone marrow testing shows evidence for a bone marrow disorder likely a myeloproliferative, myelodysplastic crossover of

some sort." ECF 141-7 at 3. His assessment states "MPS/MPD, not further specified. I made the patient and his family aware that making it firm diagnosis for many bone marrow failure disorders is often a great challenge." *Id.* at 4. During a visit to his urologist in 2012, Coppage advised the doctor that he had been diagnosed with a bone marrow disorder, and was undergoing observation. ECF 141-8 at 16:12-17:2 (Dr. Rubenstein Dep.).

In 2016, Coppage's health declined, and he began receiving regular blood transfusions. ECF 149-2 at 12 (Ex. A at 92:1-93:8). In 2017, the doctors prescribed chemotherapy. *Id.* at 97:7-99:9. Specifically, in April, 2017, while Coppage was at Walgreens to pick up his chemotherapy drug, the pharmacist handed him a brochure discussing the connection between benzene exposure and myelodysplastic syndrome ("MDS"). *Id.* at 100:22-102:19. Coppage testified he had never asked any of his doctors what caused his bone marrow disorder, but upon reading that brochure, he "start[ed] putting things together." *Id.* at 166:4-13. At that point, he "felt like it was a very good possibility that this benzene was in all the products that I worked around for 30 some years," and called a lawyer. *Id.* at 167:19-169:3.

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence

to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### III. ANALYSIS

The Motion contains two primary arguments: (1) that Counts I, III, IV, and V of Plaintiff's First Amendment Complaint are barred by Maryland's three-year statute of limitations; and (2) that Count II, claiming breach of warranty, is barred by Maryland's four-year statute of limitations. ECF 141-2 at 6-10. This Court concurs with the second argument, but finds that the first lacks merit.

4

## A. Counts I, III, IV, and V are not Time-Barred.

The parties agree that Maryland law applies to their dispute, and that Maryland's three-year statute of limitations governs the claims asserted in Counts I, III, IV, and V of the First Amended Complaint. *See* ECF 141-2 at 6; ECF 149 at 10. Their disagreement revolves around the date on which Plaintiff's causes of action accrued. The parties agree that Maryland has adopted the discovery rule, which provides that the statute of limitations begins to run when the plaintiff "in fact knew or reasonably should have known of the wrong." *See Poffenberger v. Risser*, 290 Md. 631, 637 (1981). Inquiry notice, where a plaintiff reasonably should have known of the wrong, is "awareness implied from 'knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry (thus, charging the individual) with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued.'" *Id.* (quoting *Feritta v. Bay Shore Dev. Corp.*, 252 Md. 393, 402 (1969)).

Defendants contend that Plaintiff was on inquiry notice of his claims upon his initial diagnosis of a bone marrow failure disorder by Dr. Smith in 2012. ECF 141-2 at 8. Plaintiff counters that he did not have notice that would cause a reasonable person to inquire into the causes of his bone marrow condition, until he was handed the brochure in Walgreens in April, 2017. ECF 149 at 12. The brochure explains that MDS "starts in the bone marrow" and is more common in people exposed to benzene, which is found primarily in petroleum products. ECF 149-2 at 34 (Ex. B at 9).

The cases Defendants cite in support of their argument are readily distinguishable from this case. *See* ECF 141-2 at 7-8. First, Defendants cite *Georgia-Pacific Corp. v. Benjamin*, 394 Md. 59, 96-97 (2006), which held that a plaintiff diagnosed with mesothelioma in 1997, who was also aware of his exposure to asbestos, was on inquiry notice of his cause of action against the

5

manufacturers and suppliers of the chemicals. The trial court had noted that the plaintiff's "medical report indicated specific examples and several references to asbestos exposure and the diagnosis of mesothelioma." *Id.* at 95. The Court of Special Appeals specifically concluded, and the Court of Appeals agreed, that "a reasonable person would have investigated and discovered a causal connection between mesothelioma and asbestos exposure by the state of general knowledge of occupational diseases and asbestos exposure at the time." *Id.* at 96.

This case is readily distinguishable. The evidence here reflects that Plaintiff did not receive any precise diagnosis in 2012, other than "bone marrow failure disorder," and had not had any discussion with his treating physicians about any connection between benzene exposure and his (at that time relatively asymptomatic) condition. *See* ECF 141-7 at 3-4; ECF 149-2 at 20 (Ex. A at 166:4-13). Further, the linkage between benzene exposure and MDS in 2012 was certainly not established to the same degree as the linkage between asbestos and mesothelioma in 1997. In fact, even today in 2019, United States Steel expressly contends that Plaintiff's experts are inaccurate in their opinion "that exposure to benzene, including in chemical solvents, might increase the risk for MDS." ECF 141-2 at 9. Given Defendants' position that the linkage remains unproven, their argument that a reasonable inquiry by Plaintiff in 2012 would have revealed a causal connection is untenable.

Second, Defendants cite *State v. Copes*, 175 Md. App. 351, 375 n. 12 (2007).[1] In that case, a plaintiff had sustained a right leg injury and had an "immobilizer device" placed in her leg in December, 2002. *Id.* at 362. She began having recurring issues with her right leg, including an

---

[1] Plaintiffs also cite a third case, *Philip Morris USA, Inc. v. Christensen*, 394 Md. 227, 269 (2006). That case simply remanded a discovery rule issue to the Circuit Court to consider in light of the intervening holding in *Georgia-Pacific*, and did not apply the discovery rule standard to a particular set of facts. *Id.* Thus, it is not instructive.

ulcer on her right Achilles, on March 13, 2003, which was determined to have resulted from the improper placement of the device. *Id.* at 362-63. She was admitted to the hospital on June 4, 2003, with the infected wound and "probable sepsis." *Id.* at 363. By June 9, 2003, she had been diagnosed with a severe infection, resulting in amputation of her right leg above the knee. *Id.* Her condition continued to deteriorate, and she died on July 12, 2003. *Id.* Her survivors submitted a claim to the State Treasurer's office on July 2, 2004, within one year of her death, attempting to comply with the requirement of the Maryland Tort Claims Act requiring written notice within one year of the injury. *Id.* at 364-65. However, the Court concluded that "by June 9, 2003, the facts constituting the injury element of Gladys's cause of action for medical negligence were in existence," and thus that the written notice was untimely. *Id.* at 373-74.

Here, although Coppage was well aware of his historical exposure to petroleum-based solvents and inks, *see, e.g.*, ECF 141-3 at 20:1-25:16, 32:2-39:7, this Court cannot conclude that, in 2012, Coppage had acquired information sufficient to cause an ordinary person of reasonable prudence to investigate the cause of his unspecified bone marrow failure disorder. Further, this Court cannot conclude that a reasonable investigation of Coppage's unspecified bone marrow failure in 2012 would have revealed a causal connection to his past work. The uncontroverted evidence demonstrates that Coppage first learned of a possible connection between his condition and his chemical exposure in April, 2017, *see* ECF 149-2 at 20 (Ex. A at 166:4-13), and he filed his Complaint well within the three-year statute of limitations, *see* ECF 1-4. Thus, United States Steel's motion to dismiss Counts I, III, IV, and V will be denied.[2]

---

[2] In light of this ruling, this Court need not address Plaintiff's contention that the running of the limitations period should be tolled based on fraudulent concealment. *See* ECF 149 at 20-29.

### B. Count II is Time-Barred.

Count II of the First Amended Complaint alleges a breach of warranty claim. ECF 1-4, ¶¶ 26-33. Defendants note that, in Maryland, a plaintiff must file a claim for breach of warranty within four years of the tender of delivery of the product. Md. Code Ann., Com. Law § 2-725 (West 2019). The discovery rule does not apply to breach of warranty claims. *See Mills v. Int'l Harvester Co.*, 554 F. Supp. 611, 612-13 (D. Md. 1982). Further, a third party who is injured by a defective product is subject to the same statute of limitations (here, four years) as the parties to the initial contract. *Frericks v. General Motors Corp.,* 278 Md. 304, 315-16 (1976) ("The four-year period of limitations in § 2-725 is fully applicable to actions by injured third party beneficiaries.").

Even assuming that Plaintiff qualifies as a third-party beneficiary who can sue for breach of warranty under Maryland law, *see* Md. Code Ann., Com. Law § 2-318, Plaintiff retired from his position as pressman in 2006, ECF 1-4, ¶ 4. Because his latest benzene exposure was that year, his four-year statute of limitations to file a breach of warranty claim expired in 2010, at the latest. Plaintiff's Complaint was filed on November 2, 2018, ECF 1, and is therefore time-barred. *See Mills*, 54 F. Supp. at 612-13 (finding, upon a motion for summary judgment, that the statute of limitations for plaintiff's claim against the dealer of an allegedly defective tractor began to run in 1970 upon tender of the tractor, not when the injury occurred in 1981).

Plaintiff attempts to invoke an exception to the four-year statute of limitations for products subject to future warranties. The law is clear, however, that the future warranties exception applies only when the warrantor expressly warrants that the product will have a particular quality for a particular duration of time. *Joswick v. Chesapeake Mobile Homes, Inc.,* 362 Md. 261, 272-73

(2001). Where no time is specified, "the warranty is breached upon tender of delivery, and the buyer has four years from that date in which to file suit." *Id.* at 272.

Here, Plaintiff adduces no evidence of any express warranty by United States Steel (or any of the other Defendants). Even Plaintiff's unsupported assertion, without citation, of the existence of an "express warranty" of United States Steel's product did not allege any particular time period. ECF 149 at 19. Further, an unsupported assertion is not sufficient to create a genuine issue of material fact at the summary judgment stage. Accordingly, summary judgment is granted for Defendants as to Count II, which is barred by the applicable statute of limitations.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment on Statute of Limitations, ECF 141, will be GRANTED in part and DENIED in part. A separate Order follows.

Dated: December 20, 2019                                /s/
                                               Stephanie A. Gallagher
                                               United States District Judge