```
                                                      Page 1

                                                 1
 1         IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
 2                    - - -
 3   JAMES COPPAGE              :
              Plaintiff,        : Civil Action
 4        vs.                   : No.
                                : 1-18-cv-03823-
 5   UNITED STATES STEEL        : GLR
     CORPORATION, et al.,       :
 6                              :
              Defendants.       :
 7
 8                    - - -
 9              November 21, 2019
10                    - - -
11           Oral Deposition of ROBERT F.
12   HERRICK, Sc.D., CIH, FAIHA, taken pursuant
13   to Notice at Veritext-Boston, 101 Arch
14   Street, Suite 650, Boston, Massachusetts
15   02110, beginning at 9:09 a.m. before
16   Brigitte A. Strain, a Federally Approved
17   Registered Professional Reporter and Notary
18   Public.
19                    - - -
20
21
22
              VERITEXT LEGAL SOLUTIONS
23               NEW ENGLAND REGION
24
```

**DEFENDANT'S EXHIBIT 3**

Page 6

6

INDEX

- - -

Testimony of: ROBERT F. HERRICK, Sc.D, CIH, FAIHA

| | |
|---|---|
| By Mr. Cairone | 8, 260 |
| By Ms. Prosser | 72, 302 |
| By Mr. Roberts | 133 |
| By Mr. Fishkin | 141 |
| By Mr. Weiss | 178 |
| By Mr. Fitzpatrick | 184 |
| By Mr. Perry | 185 |
| BY Mr. Rising | 194, 273 |
| By Ms. Downie | 214, 297 |
| By Mr. DuPont | 235, 297, 309 |

- - -

EXHIBITS

- - -

| EXHIBIT NUMBER | DESCRIPTION | PAGE MARKED |
|---|---|---|
| Herrick 1 | Expert Report of Dr. Herrick | 20 |
| Herrick 2 | Handwritten Notes Re conversation with Mr. Southwarth | 37 |
| Herrick 3 | Document headed, "Evidence of 50 percent Benzene Solvent" | 67 |
| Herrick 4 | Curriculum Vitae | 75 |
| Herrick 5 | Dropbox documents | 110 |

Page 7

7

DEPOSITION SUPPORT INDEX

INSTRUCTION NOT TO ANSWER:
Page Line
None

REQUEST FOR PRODUCTION OF DOCUMENTS:
Page Line   Description
None

STIPULATIONS:
Page Line
 8    1

QUESTIONS MARKED:
Page Line
None

Page 8

ROBERT F. HERRICK, Sc.D., CIH, FAIH

1 (It is hereby stipulated and
2 agreed by and among counsel for the
3 respective parties that an objection
4 by one defendant shall inure to the
5 benefit of all defendants.)
6           - - -
7     ROBERT F. HERRICK, Sc.D., CIH,
8 FAIHA, after having been first duly
9 sworn, was examined and testified as
10 follows:
11          - - -
12         EXAMINATION
13          - - -
14 BY MR. CAIRONE:
15     Q.  Good morning, Dr. Herrick. How
16 are you?
17     A.  Fine, thank you.
18     Q.  I'm Matt Cairone. I represent
19 United States Steel Corporation.
20         Did you bring anything with
21 you today?
22     A.  Yeah, I have a couple of
23 documents, which we can -- Should I get them
24 right now?

Page 9

ROBERT F. HERRICK, Sc.D., CIH, FAIH

1     Q.  Well, let me ask you. What
2 are those documents?
3     A.  Well, one -- the main thing is
4 notes from a phone call I had with Mr.
5 Southworth, who was one of the co-workers.
6 And he answered some questions I had about
7 the solvent use.
8     Q.  Is that in your report?
9     A.  No.
10    Q.  Why not?
11    A.  Well, I just talked to him
12 yesterday.
13    Q.  And so we're here to depose
14 you today and you're now giving us new
15 information that we've not had any access
16 to?
17    A.  Well, it's actually -- He
18 confirmed things that are largely reflected
19 in the report. So it isn't as if there was
20 anything brand fresh and new that --
21    Q.  So, there are no new
22 underlying facts that you got from Mr.
23 Southworth?
24        MR. DuPONT: Objection, form.

3 (Pages 6 - 9)

Page 22

ROBERT F. HERRICK, Sc.D., CIH, FAIH

1  Q.  I know he worked beyond that,
2  but I'm going to leave that for other folks
3  to ask you about. I think you've already
4  said it in our discussion about the new
5  information that you provided this morning,
6  that Mr. Coppage said he used a solvent for
7  cleaning purposes at all three of the sites
8  that we just mentioned, but he never
9  identified that solvent by name; correct?
10     A.  That is correct. Right.
11     Q.  So, he never identified the
12 solvent that he used by chemical name.
13 Correct?
14     A.  My recollection from his
15 deposition was that he just said he couldn't
16 remember.
17     Q.  So, he didn't remember
18 anything about it, other than it was a
19 solvent?
20         MR. DuPONT: Objection, form.
21         THE WITNESS: Well, I think
22     that's probably fair. Yeah.
23 BY MR. CAIRONE:
24     Q.  Just for the record, he didn't

Page 23

ROBERT F. HERRICK, Sc.D., CIH, FAIH

1 identify it by chemical name. Right?
2     A.  Right.
3     Q.  He didn't identify it by
4 product name. Right?
5     A.  Right.
6     Q.  He didn't identify it by brand
7 name. Right?
8     A.  Right.
9     Q.  Now, what he did say was that
10 it was clear. Do you remember that?
11    A.  I do.
12    Q.  You didn't mention that in
13 your report, did you?
14    A.  It doesn't ring a bell. I
15 don't think I said anything about -- I don't
16 think I addressed that. No.
17    Q.  Now, you relied on the
18 deposition of a Mr. Stallings; right?
19    A.  I did.
20    Q.  Mr. Stallings worked as a
21 junior pressman at the News-American from
22 1956 to 1961; correct?
23    A.  I think that's what I tried to
24 capture in that additional table I just --

Page 24

ROBERT F. HERRICK, Sc.D., CIH, FAIH

1 It's the column I added on the far right
2 side of the table under Stallings.
3     Q.  So, in this document you just
4 gave me, it says that he started in the
5 pressroom at the News-American in 1956, and
6 he became an apprentice in 1961. So, what I
7 just asked you, that's correct. Right?
8     A.  I think that's right. Yeah.
9     Q.  And then Mr. Stallings worked
10 as an apprentice from either 1961 to 1966 or
11 '67, rotating among the Baltimore Sun, the
12 News-American and Alco-Gravure just like Mr.
13 Stallings did during a slightly different
14 time period. Right?
15         MR. DuPONT: Objection, form.
16         THE WITNESS: I think that's
17    right. Yeah.
18 BY MR. CAIRONE:
19    Q.  And then Mr. Stallings worked
20 as a journeyman pressman from 1966 or 1967
21 to about 1986 at the News-American. Right?
22    A.  I think that's right. Yeah.
23    Q.  And then Mr. Stallings worked
24 as a journeyman pressman at the Baltimore

Page 25

ROBERT F. HERRICK, Sc.D., CIH, FAIH

1 Sun from 1986 to 2002; correct?
2     A.  I think that's right. Yeah.
3     Q.  By my calculation, the only
4 overlap where Mr. Coppage and Mr. Stallings
5 actually worked in the same rotation was
6 1965 to either '66 or '67. Is that fair?
7     A.  Is that his rotation as an
8 apprentice? Is that --
9     Q.  Well, I'm asking you. I just
10 want to make sure we --
11    A.  Okay. Can I see my little
12 table?
13    Q.  Yes.
14    A.  That's the way I tried to put
15 this together. Thanks. Yeah, he was at the
16 News-American, but that was before Mr.
17 Coppage was there. And so -- yeah, I think
18 I would agree that most of his direct
19 overlap time was during this time when he
20 was the journeyman on call. He was at the
21 News-American, and he was at the Sun. He was
22 also at Alco-Gravure during that period.
23    Q.  Well, you say direct overlap,
24 but they were both -- During this short time

Page 30
ROBERT F. HERRICK, Sc.D., CIH, FAIH 30
1 about what he did in these two places.
2    Q.   When you calculated the
3 exposure assessment, did you take into
4 account the locations?
5    A.   No, I didn't.
6    Q.   That's all I was trying to
7 clarify.
8    A.   Okay.
9    Q.   So, getting back to where we
10 were, Mr. Stallings identified a general
11 purpose cleaning solvent, and he identified
12 three companies. Correct?
13   A.   Yeah, I'm just trying to --
14 yes, that's right.
15   Q.   And those three companies were
16 U.S. Printing Inks, Sun Chemicals and Hanco;
17 correct?
18   A.   Right. That's what he said.
19   Q.   And he also said that at the
20 Baltimore Sun, he used the U.S. Printing and
21 Sun Chemical solvent about 60 percent of the
22 time and the Hanco about 40 percent of the
23 time. Do you remember that?
24   A.   Yeah. I'm just looking at --

Page 31
ROBERT F. HERRICK, Sc.D., CIH, FAIH 31
1 Yes, I do remember that. Right.
2    Q.   And Mr. Stallings said at
3 News-American he used the U.S. Printing and
4 the Sun Chemical solvent about 70 to 75
5 percent of the time, and the Hanco about 25
6 to 30 percent of the time. Do you remember
7 that?
8    A.   I do. That sounds familiar.
9 Yep.
10   Q.   Now, Mr. Stallings, in his
11 deposition, said he could not identify the
12 solvent by name or product number. Is that
13 correct?
14   A.   I believe that is what he
15 said. Yeah.
16   Q.   And did Mr. Stallings talk at
17 all about the U.S. Printing or Sun Chemical
18 solvent in his deposition?
19        MR. DuPONT: Objection, form.
20        THE WITNESS: Help me
21    understand. When you say talk about,
22    I mean, he talks about --
23 BY MR. CAIRONE:
24   Q.   Did he say anything about it?

Page 32
ROBERT F. HERRICK, Sc.D., CIH, FAIH 32
1    A.   Well, he talked a lot about
2 how he used it. Is that kind of what you're
3 --
4    Q.   So, it's your testimony that
5 Mr. Stallings testified about how he used a
6 U.S. Printing ink solvent?
7    A.   Well, I'd have to go back and
8 look more carefully in his deposition. I
9 don't remember if he talked about the
10 product use on a product specific basis.
11   Q.   Now, Mr. Stallings was deposed
12 in -- not this case. You know that, right?
13   A.   I do. Yeah.
14   Q.   Do you know what the product,
15 at issue was in the case he was deposed?
16   A.   I don't.
17   Q.   Do you know whether a U.S.
18 Printing solvent was at issue in that case?
19   A.   I don't know much about that
20 case. No.
21   Q.   Do you know if a Sun Chemical
22 solvent was at issue in that case?
23   A.   I don't.
24   Q.   Do you recall, as you sit here

Page 33
ROBERT F. HERRICK, Sc.D., CIH, FAIH 33
1 today, Mr. Stallings ever mentioning a U.S.
2 Printing ink product in his deposition?
3    A.   You know, I have to say, I'm
4 not -- I don't recall that much about his
5 deposition to give you a really good answer
6 to that.
7    Q.   Same question on Sun Chemical.
8 As you sit here today, do you recall him
9 ever mentioning a Sun Chemical solvent in
10 his deposition?
11   A.   I don't.
12        MR. DuPONT: Objection, form.
13 BY MR. CAIRONE:
14   Q.   Now, on page 16 of your
15 report -- I'll let you go there -- Mr.
16 Stallings said that the solvents that he
17 used were always clear.
18   A.   I see that. Yep.
19   Q.   And, as we've already
20 established, Mr. Coppage also said the
21 solvent he used was always clear, but you
22 didn't put that in your report. Right?
23   A.   Apparently not, no.
24   Q.   Now, can we also agree that

Veritext Legal Solutions
215-241-1000 ~ 610-434-8588 ~ 302-571-0510 ~ 202-803-8830

Page 34

ROBERT F. HERRICK, Sc.D., CIH, FAIH34

1  even according to Mr. Stallings' deposition,
2  there was no Hanco product used at
3  Alco-Gravure?
4  　　　MR. DuPONT: I think you made
5  　　a misrepresentation about what's in
6  　　his report. So I'll make an objection
7  　　to that for the record.
8  　　　THE WITNESS: Could you repeat
9  　　that one? I just want to make sure I
10 　　understood the --
11 BY MR. CAIRONE:
12 　Q.　Yes. I'm saying there was no
13 Hanco product used at Alco-Gravure. The
14 product that was identified was toluene.
15 　A.　That was -- I remember that
16 Stallings mentioned toluene; right.
17 　Q.　Did he mention Hanco at
18 Alco-Gravure?
19 　A.　Let's see.
20 　Q.　Take your time.
21 　A.　Sure.
22 　　　No, I don't remember that he
23 did.
24 　Q.　And you would agree with me

Page 35

ROBERT F. HERRICK, Sc.D., CIH, FAIH35

1  that both Mr. Coppage and Mr. Stallings said
2  the printing process at Alco-Gravure was
3  entirely different from the one at the
4  Baltimore Sun or the News-American; right?
5  　A.　Well, they did say it was
6  different, especially the cleaning processes
7  particularly.
8  　Q.　And the printing process;
9  right?
10 　A.　It is different. Sure.
11 　Q.　One is rotogravure; right?
12 　A.　Right.
13 　Q.　Now I want to focus on the
14 1960 to 1969 time period. Okay?
15 　A.　Okay.
16 　Q.　Now, Mr. Coppage, during that
17 particular time period, could not identify
18 the solvent he used, but he said it was
19 clear. Correct?
20 　　　MR. DuPONT: Objection, form.
21 　　　THE WITNESS: I just want to
22 　　double check. So this is before he
23 　　went to Alco; right?
24 BY MR. CAIRONE:

Page 36

ROBERT F. HERRICK, Sc.D., CIH, FAIH36

1  　Q.　Yes.
2  　A.　Right. Correct.
3  　Q.　And Mr. Stallings identified
4  three solvents that he says they used at
5  Baltimore Sun and News-American; correct?
6  　A.　I think that is correct. Yeah.
7  　Q.　Mr. Stallings did not identify
8  any of those solvents by product name.
9  Correct? Well, I'm sorry, by the exact
10 product name.
11 　A.　He didn't. He mentioned what
12 he thought was the manufacturer, not the
13 product name.
14 　Q.　Okay. And he could not, and
15 he did not identify the product number of
16 any Hanco solvent. Right?
17 　　　MR. DuPONT: Compound.
18 BY MR. CAIRONE:
19 　Q.　Let me address that.
20 　A.　Sure.
21 　Q.　Good objection. I'll break it
22 down.
23 　　　He did not identify the
24 product number of any Hanco product.

Page 37

ROBERT F. HERRICK, Sc.D., CIH, FAIH37

1  Correct?
2  　A.　That's correct.
3  　Q.　And he said he could not
4  identify any product number of any Hanco
5  product, correct?
6  　A.　That's correct.
7  　Q.　At this point, I was going to
8  go into your exposure assessment, but why
9  don't we take a break so we can get these
10 copied, and we can all take a look at them.
11 That's probably going to take at least 15
12 minutes. Okay?
13 　A.　Okay.
14 　Q.　We're going to take a 15
15 minute break. I guess we could try to e-mail
16 these folks, but I'm not sure how that's
17 going to work.
18 　　　(Discussion held off the
19 　　record.)
20 　　　(Whereupon there was a recess
21 　　in the proceeding from 9:34 a.m. to
22 　　9:43 a.m.)
23 　　　 - - -
24 　　　(Whereupon the document was

Page 50
ROBERT F. HERRICK, Sc.D., CIH, FAIH
1 your assumption that Mr. Coppage's use of
2 solvents prior to 1977 was solvents that
3 contained 50 percent benzene?
4     A.    Well, it's consistent with
5 what was going on in the practice of
6 printing during that time period, that
7 benzene-containing solvents were used for
8 this general purpose cleaning.
9     Q.    Do you know that Hanco had
10 multiple products for use with printing
11 presses and cleaning?
12    A.    I do.
13    Q.    Why did you choose this one?
14 Mr. Graham was not talking about Mr.
15 Coppage.
16    A.    No, I understand that part. I
17 was using this because I thought this was a
18 good representation of a general purpose
19 product. And I realized that Hanco has a
20 lot of other products, a lot of which have
21 more specialized applications.
22    Q.    What do you think MS-408 is
23 used for?
24    A.    My assumption here was that it

Page 51
ROBERT F. HERRICK, Sc.D., CIH, FAIH
1 was general purpose cleaning.
2     Q.    And if that assumption is
3 wrong, then the basis for this 50 percent
4 benzene is wrong.
5           MR. DuPONT: Objection, form.
6           THE WITNESS: Well, I'd have
7     to look. I mean, it's possible that
8     if there's a different number, it
9     would have, you know, resulted in a
10    different calculation.
11 BY MR. CAIRONE:
12    Q.    Please answer my question,
13 Doctor. You just said that you assumed this
14 was a general purpose cleaner. Right?
15    A.    Right.
16    Q.    If that assumption is wrong,
17 then your use of this product as the basis
18 of your assumption of the benzene content is
19 wrong.
20    A.    It would require a different
21 value if the benzene content was different,
22 yeah.
23    Q.    And if it requires a different
24 value, it's wrong.

Page 52
ROBERT F. HERRICK, Sc.D., CIH, FAIH
1           MR. DuPONT: Objection, form.
2           THE WITNESS: Okay. I could
3     recalculate it. It would give us a
4     different answer.
5 BY MR. CAIRONE:
6     Q.    Right. I think that's an
7 answer, although not clear.
8           Now, what I want to show you,
9 though is, just above the passage of this
10 deposition that you use for your assumption,
11 just above it, it says -- I'm sorry, not
12 just above it, but it's on page 244, which
13 isn't far above it.
14          Now, we're talking about
15 MS-408. Okay? Are you with me?
16    A.    Yep.
17    Q.    Line 22, page 244.
18          "In any event, it's your
19 understanding, based on looking at the
20 documents, that Hancolite, which was MS-408,
21 would have been purple in color during the
22 '60s and '70s and early '80s. Correct?"
23          Answer: "Violet, purple.
24 However, yes, it was shaded."

Page 53
ROBERT F. HERRICK, Sc.D., CIH, FAIH
1           Why didn't you put that in
2 your report?
3     A.    Well, it was mainly focused on
4 the benzene content and I didn't know, you
5 know, that that information really added
6 anything.
7     Q.    We just established that both
8 Mr. Stallings and Mr. Coppage said the
9 solvent they used was always clear.
10          MR. DuPONT: Objection, form.
11 BY MR. CAIRONE:
12    Q.    Didn't we?
13    A.    I remember that conversation,
14 yeah.
15    Q.    Is it your testimony really,
16 Dr. Herrick, that the fact that MS-408 was
17 purple is not relevant?
18    A.    Well, it didn't really factor
19 into my calculations around the benzene
20 content, no.
21    Q.    Okay. Your benzene content
22 was based on an assumption that Mr. Coppage
23 used MS-408. Right?
24    A.    That's correct, yeah.

14 (Pages 50 - 53)

Page 54
ROBERT F. HERRICK, Sc.D., CIH, FAIH54
1    Q.   Mr. Coppage said he used a
2  clear solvent; right?
3    A.   He did.
4    Q.   According to Mr. Graham, who
5  you rely on, MS-408 was purple.
6    A.   I understand that.
7    Q.   And that's of no consequence
8  to you?
9    A.   Well, no. I mean, the
10 distinction -- I get the distinction.
11   Q.   What's the distinction?
12   A.   Well, there's a discontinuity
13 between Mr. Coppage's recollection and what
14 Mr. Graham testified to. I guess I would
15 just say, you know, in terms of talking to
16 someone like Coppage, asking him about a
17 product he used, what, 40 years ago, I guess
18 I'm not completely shocked that, you know,
19 there could be information that either he
20 didn't recall correctly or he just
21 misstated.
22   Q.   So you just assumed Mr.
23 Coppage was wrong. He got it wrong.
24        MR. DuPONT: Objection.

Page 55
ROBERT F. HERRICK, Sc.D., CIH, FAIH55
1        THE WITNESS: No, I didn't
2    really make any assumption, you know,
3    other than trying to, you know, use
4    the best available information.
5  BY MR. CAIRONE:
6    Q.   What is better available
7  information than the testimony of the
8  plaintiff and his co-worker?
9    A.   I'm not trying to suggest it's
10 not good information. I'm just pointing out,
11 you know, that he's being asked about
12 details of products that he used in the
13 distant past.
14   Q.   Well, then maybe Mr. Stallings
15 doesn't remember what they used either.
16        MR. DuPONT: Objection, form.
17   Misstates testimony.
18 BY MR. CAIRONE:
19   Q.   You can't have it both ways.
20        MR. DuPONT: Now you're
21   arguing.
22        THE WITNESS: You know, I --
23   over the years, when I've, you know,
24   done a lot of these worker

Page 56
ROBERT F. HERRICK, Sc.D., CIH, FAIH56
1  interviews, you know, my impression
2  has always been that people are much
3  better at recalling what they did
4  than particular details, like, you
5  know, the size of the room they were
6  in, or the height of the ceiling or
7  something like that. And so, you
8  know, when I read these depositions
9  and look at this information, I try
10 to keep that in mind.
11 BY MR. CAIRONE:
12   Q.   And let's be clear. Mr.
13 Stallings also said the solvent was always
14 clear. Right?
15   A.   Yes.
16   Q.   So you have the only two fact
17 witnesses, that I'm aware of, that could
18 identify the color of the solvent, and they
19 both said it was clear. Right?
20   A.   They did.
21   Q.   And we now established that
22 MS-408 Hancolite Glaze Cleaner is purple.
23 Right?
24        MR. DuPONT: Objection, form.

Page 57
ROBERT F. HERRICK, Sc.D., CIH, FAIH57
1        THE WITNESS: That's what
2    Graham said, yeah.
3  BY MR. CAIRONE:
4    Q.   Okay. Well, in fact, on page
5  210 of Mr. Graham's deposition, he testified
6  specifically, in response to questions asked
7  by MR. DuPONT, that the formula for
8  Hancolite MS-408 called for the addition of
9  a dye. Did you read that?
10   A.   Uh-huh.
11   Q.   No reaction to that?
12   A.   No. I mean, I remember seeing
13 this information and, you know, I recognize
14 that there's some discordance between that
15 information and what Stallings and Coppage
16 recalled.
17   Q.   Tell me what you mean by some
18 discordance.
19   A.   Well, I just -- you know,
20 again, not to be redundant, but that -- you
21 know, I'm not completely surprised that, you
22 know, someone might not necessarily have a,
23 you know, detailed recall of the color of a
24 solvent that he used 40 years ago.

15 (Pages 54 - 57)

Page 66

ROBERT F. HERRICK, Sc.D., CIH, FAIH 66

1   Q.   -- to which you input data.
2   Right?
3   A.   Right.
4   Q.   And the program then
5   calculates data and comes up with a result.
6   Right?
7   A.   That's correct. Yeah.
8   Q.   And we've already established
9   that the benzene content of the product at
10  issue is critical in determining the outcome
11  of that Excel spreadsheet. Right?
12  A.   It is. Yes.
13  Q.   So can we agree that if you
14  put the wrong input, you get the wrong
15  answer?
16  A.   Well, sure. I mean, the model
17  is only as good as the information you
18  supply.
19  Q.   So if in calculating your
20  exposure assessment, your assumption that
21  all of the solvents contain 50 percent
22  benzene prior to 1977, if that was wrong,
23  hypothetical, then your answer is wrong.
24       MR. DuPONT: Objection, form.

Page 67

ROBERT F. HERRICK, Sc.D., CIH, FAIH 67

1        THE WITNESS: Yeah.
2   BY MR. CAIRONE:
3   Q.   Give me five minutes to look
4   at my notes. I might be done.
5   A.   Okay.
6        (Whereupon there was a recess
7        in the proceeding from 10:11 a.m. to
8        10:16 a.m.)
9        - - -
10       (Whereupon the document was
11       marked, for identification purposes,
12       as Herrick Exhibit Number 3.)
13       - - -
14  BY MR. CAIRONE:
15  Q.   I have one or two questions,
16  based on these new notes. And, again,
17  without waiving my reservation of rights and
18  the motion to strike I put on the record
19  earlier, I'll ask you a question.
20       We've marked Exhibit 3, Dr.
21  Herrick, which is a copy of the three
22  typewritten pages of -- I think it's three.
23  Yes. Three typewritten pages of notes that
24  you've produced this morning. And the one

Page 68

ROBERT F. HERRICK, Sc.D., CIH, FAIH 68

1   thing I want to ask you about is --
2   Stallings is Exhibit 2. You have a note
3   there. Do you see your notes?
4   A.   I do.
5   Q.   Can you read what your note
6   says?
7   A.   Shown -- Is this the right
8   one? Under Stallings Exhibit 2?
9        "Shown the label of the
10  Hancolite Glaze Cleaner and says that the
11  label was on the side of the drum. Page 66,
12  1 through 10."
13  Q.   So when you read page 66 of
14  Mr. Stallings' deposition, that's what you
15  took away from that, that he said the
16  Hancolite Glaze Cleaner label was on the
17  side of the drum?
18  A.   I think that that's accurate.
19  Yeah. I don't have the deposition right in
20  front of me, but that's --
21  Q.   Well, I do.
22  A.   Okay.
23  Q.   And the question is: "Okay.
24  Tell us what, if anything, you remember in

Page 69

ROBERT F. HERRICK, Sc.D., CIH, FAIH 69

1   terms of signage, labelage, anything that in
2   terms of the 55-gallon drum is similar to
3   what you see in Plaintiff's Exhibit 2."
4        Answer: "In addition to
5   Hanco, the other two products I mentioned,
6   they had these labels on the side of the
7   drum and on the top of the drum. They were
8   all there. They were -- all three were about
9   the same. And they were either taped on or
10  glued on, so they were readily visible,
11  visibly available. You had to be a blind
12  person not to see them."
13       Did you take that to be an
14  answer that he saw the Hancolite Glaze
15  Cleaner label on all three of the products
16  that he used?
17  A.   Oh, I see what you're saying.
18  No, they weren't -- I mean, I understand the
19  question. They were not all three Hancolite
20  Glaze Cleaner. What I think was being
21  referred to in the question was some of the
22  other information that's on that label. He
23  recognized that.
24  Q.   He recognized the Hanco name.

18 (Pages 66 - 69)

Page 70
ROBERT F. HERRICK, Sc.D., CIH, FAIH
1           MR. DuPONT: Objection, form.
2   BY MR. CAIRONE:
3       Q.   Because in the context of the
4   rest of his testimony, he said, "I couldn't
5   identify the product and I couldn't identify
6   the number." We've already established that.
7   Right?
8           MR. DuPONT: Objection,
9       compound.
10          THE WITNESS: Right. What I
11      was referring to, though, is there's
12      other information on that label. And
13      my interpretation of it was that he
14      was including that. That's what he
15      was referring to.
16  BY MR. CAIRONE:
17      Q.   But you're not saying that
18  that passage from the deposition means that
19  all three of these solvents had Hancolite
20  Glaze Cleaner on it. That wouldn't -- that
21  couldn't be possible. They were made by
22  different companies.
23      A.   Absolutely. I wasn't trying to
24  imply that he was claiming all three of them

Page 71
ROBERT F. HERRICK, Sc.D., CIH, FAIH
1   were Hancolite glaze cleaner, no.
2       Q.   Are you trying to assume from
3   this that he was saying one was?
4           MR. DuPONT: Objection, form.
5           THE WITNESS: Well, that would
6       have been -- that -- I would assume
7       that, you know, since the universe of
8       products is only three, and, you
9       know, he had mentioned that the Hanco
10      product was one of them.
11  BY MR. CAIRONE:
12      Q.   He mentioned Hanco. Right?
13      A.   Right.
14      Q.   And it says Hanco on Exhibit
15  2. Right?
16      A.   I don't have it in front of
17  me. I think so.
18      Q.   Have you looked at Exhibit 2?
19      A.   Sure. But I can't remember
20  just sitting right here now.
21      Q.   But you'll agree with me that
22  in his deposition he said he could not
23  identify the product name, the Hanco product
24  name.

Page 72
ROBERT F. HERRICK, Sc.D., CIH, FAIH
1           MR. DuPONT: Objection, form.
2   BY MR. CAIRONE:
3       Q.   Right?
4       A.   And he couldn't identify the
5   Hanco product number.
6           MR. DuPONT: Objection, form.
7   BY MR. CAIRONE:
8       Q.   Correct?
9       A.   Correct.
10      Q.   Okay. Those are all the
11  questions I have.
12          MR. CAIRONE: Go ahead,
13      Deborah.
14              - - -
15  BY MS. PROSSER:
16      Q.   Okay. Thank you.
17          Hi, Dr. Herrick. My name is
18  Deborah Prosser and I represent Graphic
19  Packaging and Handschy International in this
20  case.
21          When were you retained by MR.
22  DuPONT?
23      A.   On this particular case, or in
24  general?

Page 73
ROBERT F. HERRICK, Sc.D., CIH, FAIH
1       Q.   No, in this case.
2       A.   Oh. Well, I was working on
3   this report back in the spring. And so I'll
4   say, you know, some time in early 2019.
5       Q.   And you just suggested in your
6   last answer to me that you're doing other
7   work for MR. DuPONT. Is that correct?
8       A.   There's other cases that I've
9   worked on, yeah.
10      Q.   With MR. DuPONT?
11      A.   That's correct, yes.
12      Q.   How many?
13      A.   How many are active right now,
14  or in total?
15      Q.   How many cases in total have
16  you ever been retained on by MR. DuPONT?
17      A.   I think there's probably about
18  six in total.
19      Q.   Are they all benzene-related
20  exposure cases?
21      A.   They are.
22      Q.   Now, I know you talked to the
23  co-worker Mr. Southworth yesterday. Did you
24  make any attempt to talk to Mr. Robert

Page 130

ROBERT F. HERRICK, Sc.D., CIH, FAI 130

1 compound, beyond the scope and lacks
2 foundation.
3 BY MS. PROSSER:
4     Q.    Okay. Let me just ask you.
5 The ACGIH TLV for benzene from 1960 to 1969
6 was 25 parts per million. Correct?
7     A.    I think that's correct, yes.
8     Q.    Now, just as a general rule,
9 if somebody says to you, I used a general
10 purpose cleaning solvent from 1960 to '69,
11 that doesn't tell you -- by the use of the
12 term general cleaning solvent, that doesn't
13 tell you about the benzene content, if any.
14 Right?
15    A.    Well, I think you'd want to
16 refine the question just a little bit. If
17 you were talking about people working in
18 pressrooms during that time period, you
19 know, I think one could reasonably conclude
20 that there's a good likelihood that that
21 cleaning material was benzene-containing
22 because that was a common practice in the
23 '60s and '70s.
24    Q.    And that would cover both

Page 131

ROBERT F. HERRICK, Sc.D., CIH, FAI 131

1 solvents that had benzene as a contaminant
2 for trade spending as well as solvent where
3 perhaps there was benzene added. Right?
4         MR. DuPONT: Form. Compound.
5     Vague.
6         THE WITNESS: I wouldn't rule
7     it out that there could have been a
8     wide range of benzene contents in
9     those cleaners. Yeah.
10 BY MS. PROSSER:
11    Q.    So my only point that I was
12 trying to get to in my question was, just
13 the fact of the generic description, general
14 purpose cleaning solvent, that doesn't tell
15 you whether there was benzene as a trace
16 constituent or contaminant versus benzene as
17 an added ingredient. That terminology,
18 general purpose cleaner. That's all I'm
19 trying to get at.
20        MR. DuPONT: Objection, form.
21        THE WITNESS: Yeah, I think in
22    this particular working environment,
23    you know, you would expect there to
24    be benzene present at some level. I

Page 132

ROBERT F. HERRICK, Sc.D., CIH, FAI 132

1     mean, if you think about the
2     technology, a lot of the inks that
3     were used, you know, were
4     benzene-containing themselves. So it
5     makes sense that the material that
6     was used to clean the inks also was
7     benzene-containing.
8 BY MS. PROSSER:
9     Q.    Right. I guess I'm not being
10 clear, and I apologize. I'm just trying to
11 get to a very simple concept. The term
12 general purpose cleaning solvent doesn't
13 tell you by that term whether benzene was
14 present as a contaminant or whether benzene
15 was present as an added ingredient. You
16 would have to know what the constituents of
17 that solvent were to be able to answer the
18 question as to what percentage, if any, of
19 benzene was in that product. Is that
20 correct?
21        MR. DuPONT: Form. Vague
22    content.
23        THE WITNESS: Yeah, I think
24    that's a fair characterization. Yeah.

Page 133

ROBERT F. HERRICK, Sc.D., CIH, FAI 133

1        MS. PROSSER: Thank you.
2        Just for the record, I want to
3    join in Mr. Cairone's Motion to
4    Strike in case that wasn't clear on
5    the record.
6 BY MS. PROSSER:
7     Q.    I'm just going through here. I
8 think I might be done, but I do reserve the
9 right to come back and ask you any follow up
10 questions after other counsel have completed
11 their questioning. Thank you so much,
12 Doctor.
13    A.    Okay. Thank you.
14         - - -
15        MR. ROBERTS: This is Ted
16    Roberts for Varn, Mr. DuPont.
17 BY MR. ROBERTS:
18    Q.    Dr. Herrick, nice to meet you.
19    A.    Hello.
20    Q.    Can you hear me okay?
21    A.    Yeah, you're fine.
22    Q.    Very good. Have you asked
23 plaintiff's counsel for any information that
24 you have yet to receive regarding the

34 (Pages 130 - 133)