THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **LORENE G. BROCIOUS,** *as Personal Representative of the Estate of* **JAMES COPPAGE,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.:1-18-cv-03823-SAG |
| **UNITED STATES STEEL CORPORATION,** *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**GRAPHIC PACKAGING INTERNATIONAL, LLC'S
AND HANDSCHY INDUSTRIES LLC'S MOTION TO EXCLUDE PLAINTIFF'S
EXPERT ROBERT HERRICK AND JOINDER IN UNITED STATES STEEL'S
MOTION TO EXCLUDE PLAINTIFF'S EXPERT ROBERT HERRICK**

Defendants Handschy Industries, LLC ("Handschy") and Graphic Packaging International, LLC ("Graphic Packaging") (collectively the "Moving Defendants[1]") hereby join in Defendant United States Steel's Motion to Exclude Plaintiff's Expert Robert Herrick ("United States Steel's Motion") (ECF 153). Moving Defendants adopt and incorporate by reference the facts and arguments set forth in United States Steel's Motion; and submit the following supplemental arguments to demonstrate that the testimony and report from Plaintiff's designated expert, Dr. Robert Herrick ("Herrick"), should be excluded, because his intended opinion fails to satisfy the reliability standards established by *Daubert*.[2]

---

[1] Handschy Industries LLC is a Delaware company whose sole member is Handschy Holdings, LLC. Handschy Holdings LLC is a Delaware company whose sole member is Graphic Packaging International, LLC, a Delaware company. *See* Local Rule 103.3 Disclosure by Graphic Packaging. (ECF Doc. 64)

[2] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

**FACTUAL BACKGROUND**

Plaintiff alleges that James Coppage ("Coppage") contracted myelodysplastic syndrome ("MDS") from occupational exposure to benzene and other solvents from his career as a newspaper pressman from 1960 to 2006. Plaintiff has alleged that the following products manufactured by Handshy (collectively referred to herein as the "Handschy Products") caused his injuries and death:

> MS-216 Steel Roller Deoxidizer
> Hancolite Glaze Cleaner
> MS 405 Special Type Wash/ MS-678 Type Wash
> Plasaver
> Plabuilder

Complaint at paras. 10(f) and 10(n).

Plaintiff claims that these are all products used by Coppage at two of his pressrooms (Baltimore Sun and News American[3]) and that they contained benzene as an intentionally added ingredient. Plaintiff identified Herrick, an industrial hygienist, as an expert to testify on the alleged cumulative exposure to benzene from each of the products of the defendants named in this action. Transcript of the November 21, 2019 Deposition of Robert Herrick in the above-captioned case ("Herrick Tr.") at 87:9-21[4]. Herrick states that any testimony he would provide in this case would be limited to the scope of Coppage's alleged cumulative exposure to benzene; and that he would not be offering any other opinions in this case. Herrick Tr. at 87:23-88:2.

Moving Defendants have engaged Charles Graham ("Graham"), formerly employed by Handschy Industries, Inc. from January 1990 to January 2001 and President of Handschy Industries, Inc. from July 2006 to September of 2009, to testify, based on his experience and knowledge of Handschy products, about Plaintiff's failure to identify a Handschy product that

---

[3] Coppage was at News American and Baltimore Sun at the same time that Handschy was manufacturing its printing press solvent line between 1960 and 1969.

[4] Excerpts of the Herrick Transcript cited herein are attached as Exhibit 1.

could have caused the injuries alleged in the Complaint. A copy of the Graham Affidavit and its accompanying exhibits is attached as Exhibit 2. Graham prepared his affidavit based on a review of the Complaint, the deposition of Coppage; relevant portions of the deposition of Robert Stallings taken in the *Kelly v. C&W Pressroom Products, Inc*. matter (Case No. 08:CV-493) on April 14, 2009 that reference "Hanco" solvent; Handschy's responses to Plaintiff's written discovery; and Plaintiff's responses to Handschy and Graphic Packaging's Special Interrogatories and Requests for Production of Documents. Graham Affidavit at para. 4. He also reviewed his own prior deposition given in a 2010 case entitled *Davis v. Sunoco, Inc*. (Case No. 1835). *Id.* at para. 5.

Graham will testify that none of the Handschy Products fit the description of the "Hanco" solvent that was identified by Mr. Stallings at the Baltimore Sun and News American ressrooms. Graham states:

> Mr. Stallings and Mr. Coppage stated that the solvents they used were general purpose cleaners rather than specialty products; they were clear in color; and they were stored in 55 gallon drums at the Baltimore Sun (in the ink room) and at News American (in the pressroom). This testimony by itself eliminates the Handschy Products named in this case based on the following:
>
> (a)  The Handschy products named in this case were manufactured and marketed as colored or tinted products as a way to differentiate themselves from competitive products on the marketplace. It is my understanding that adding colored dye to the formulation of these Handschy products was a specific marketing practice adopted by Handschy from the outset of its formation and was continued throughout my employment with the company.
>
> (b)  The flash point of the products named in this case was extremely low (below 20 degrees Fahrenheit ("F")). Products with a flash point this low are extremely flammable and are required to be maintained and stored in a spark free environment to control risk of explosion. Low flashpoints create a high risk of explosion if the product is stored near equipment that generates heat during operation. A newspaper press is an extremely large piece of equipment which emits heat during its operation. The newspaper pressrooms at News American and at the Baltimore Sun had multiple

        presses, each emitting heat during operation. Pressrooms are not spark-free environments. A single spark generated from the operation of the presses creates a risk of explosion if a low flashpoint solvent is present near the equipment or in an adjoining area.

(c)    Three of the five products named in this case were never sold in 55 gallon drums, to my knowledge, but rather were sold in much smaller sized containers.

(d)    Two of the five products named in this case were specialty products and were not general purpose cleaners.

(e)    It is my understanding from my review of the documents that benzene was only used as an ingredient in two of Handschy's cleaners and in two other lithographic chemicals (four products total). Based upon the testimony and documents I reviewed in this case, I believe that the four products that Handschy manufactured with benzene as an ingredient were: 1) MS-216 Steel Roller Deoxidizer; 2) Hancolite Glaze Cleaner; 3) MS 405 Special Type Wash/ MS-678 Type Wash; and 4) Plasaver[5].

Graham Affidavit at para. 20.

## ARGUMENT

As the *Daubert* Court has explained, evidence is admissible under Rule 702 if "it rests on a reliable foundation and is relevant." *Daubert*, 509 U. S. at 597. The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence. *Id.* at 590. "Expert testimony should be excluded if it is speculative or conjectural," *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996); or where the proffered opinion is "based on data, a methodology, or studies that are simply inadequate to support the conclusions reached," *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). *Doe v. AE Outfitters Retail Co.,* 2015 WL 9255325 (ND MD Dec. 17, 2015) citing *Daubert*, 509 U.S. at 596; *see also Meterlogic Inc. v. KLT, Inc.*, 368 F.3d 1017, 1019 (8th Cir. 2004) ("The district court

---

[5] The Graham Affidavit contains a product-by-product description and attaches the Handschy documents that support the product descriptions.

must exclude expert testimony if it is so fundamentally unreliable that it can offer no assistance to the jury. . .")

This Court recently considered, and granted, a defendant's motion to exclude expert testimony, for failure to meet the reliability test under *Daubert*. *See Chapman v. Manuhehri*, No. 17-cv-3719-SAG, 2019 WL 2359270 (D. MD. Jun. 4, 2019). *Chapman,* involved, among other things, unreliable data used in the expert's calculations. In excluding a physician's testimony, the Court concluded that the physician's "opinions [fell] short of the requirements of Federal Rule of Evidence 702 and the *Daubert* standard." *Chapman,* 2019 WL 2359270 at *5. *See also General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proferred."); *Casey v. Geek Squad® Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 340-41 (D. Md. 2011) ("'nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert' ") (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. at 146).

Plaintiff was never exposed to any benzene-containing product manufactured and/or sold by Handschy. Herrick's expert testimony and report must be excluded because Herrick has not refuted (and cannot refute) the testimony of Charles Graham; nor can he testify, to a reasonable degree of certainty, that the "Hanco" product identified by Stallings was one of Handschy Products.

### A. The Basis for Herrick's Opinion Concerning Coppage's Cumulative Benzene Exposure is Fatally Flawed

Herrick made his assessment of Coppage's purported cumulative benzene exposure based on, what is referred to as, the "near-filed/far-field model." Herrick Tr. at 43:14-19. He acknowledged that the rate of benzene emission is an important part of the model.

5

Herrick Tr. at 43:20-23.  In sum, to calculate this rate, Herrick must have known the benzene content of the products used by Coppage during his employment. Herrick Tr. at 43:42-44:1-3. Herrick admitted his opinion about Coppage's benzene exposure would be wrong if he relied on faulty assumptions of the benzene content in the products used by Coppage.  Herrick Tr. at 51:13-24; 52:1-4.  He further admitted that the proper identification of the solvents used by Coppage's employers was essential to his opinion on Coppage's cumulative exposure to benzene.  Herrick Tr. at 127:10-20; 132:9-24.

Herrick's claims that the cumulative benzene exposure for Coppage was 123.14 ppm years; and, that was the total benzene exposure from his work as a pressman.  Herrick Tr. at 304:8-15.  He admitted at his deposition that he was not asked to do a Handschy or Hanco specific cumulative dose assessment for Coppage.  Herrick Tr. 304:16-19.  And, he affirmatively stated **he has no intention to do a Handschy or Hanco specific cumulative exposure assessment**.  Herrick Tr. at 304:20-24; 305:3-4 (emphasis added).  For this reason alone, and by definition, Herrick cannot testify to a reasonable degree of certainty that the product identified by Stallings was one of the benzene-containing products manufactured by Handschy.

Moreover, when asked about the basis for his estimate of Coppage's total benzene exposure, Herrick highlighted the unreliability of his own opinion when he stated his belief that he underestimated Coppage's total benzene exposure.  Herrick Tr. at 304:12-18.  And, he admitted "assuming hypothetically that the Hanco solvent that is identified by Stallings had only trace benzene as a contaminant and not benzene as an added ingredient, he would have overestimated Coppage's total benzene exposure."  Herrick Tr. 307:4-308:6.  As shown below, the evidence considered by Herrick leads to the conclusion that the "Hanco"

6

solvent identified by Stallings could only have had trace amounts of benzene; and, therefore, could not have contributed to any cumulative exposure Coppage may have had to benzene.

### B. Herrick Admitted there is No Information in the Record Showing that the Product Identified as "Hanco" Contained Added Benzene

First, and foremost, Herrick understood that there were only four products ever manufactured by Handschy that had benzene as an intentionally added ingredient. Herrick Tr. 127:10-20. He admitted that he did not have enough information to testify at trial that the "Hanco" solvent identified by Stallings was the Steel Roller Deoxidizer; he did not have enough information to testify at trial that the "Hanco" solvent identified by Stallings was the Special Type Wash; he did not have enough information to testify at trial that the Hanco solvent identified by Stallings was Plasaver; and he did not have enough information to testify at trial that the "Hanco" that the Hanco solvent identified by Stallings was the Plabuilder. Herrick Tr. 123-125:5. In sum, he admitted that he could not testify, to a reasonable degree of certainty, that the Hanco solvent identified by Stallings at News American and at the Baltimore Sun from 1950 to 1969 was one of the four Handschy products that had benzene as an added ingredient. He answered as follows to that specific question: "**You know, I don't see enough information in the record to, you know, get to that point**." Herrick Tr. 127:22; 128:1-10 (Emphasis added).

Herrick relied on Stallings's testimony about three solvents used at News American and Baltimore Sun before 1977. Stallings Tr. at 204:19-205:6.[6] Stallings testified that there were three solvents used at the Baltimore Sun press room and identified one solvent by the name of "Hanco"

---

[6] However, Stallings began his career in 1955, whereas Coppage began his career in 1960. Thus, Stallings did not perform work together with Coppage at the same time throughout their respective careers.

7

and two other solvents from two other companies. He testified that the solvents were kept in the ink room in 55-gallon drums. *Id.* at 41:18-42:8. He also testified that all three of the solvents looked like a clear liquid. *Id.* at 21:18-25. Stallings testified that while he was working at News American, the same three cleaning solvents identified at Baltimore Sun were stored in 55-gallon drums in the pressroom itself. *Id.* at 41:10-17. He used the same "Hanco" solvent throughout his career at Baltimore Sun and News American. *Id.*

When asked where he found the facts to support his opinion that the "Hanco" product identified by Stallings contained benzene, Herrick pointed to Stallings's testimony that the solvent was "sweet smelling" and "evaporated quickly." Herrick Tr. at 125:22-24; 126:1-9. He stated that those factors - sweet smell and quick evaporation rate – along with the product being a "skin irritant" . . . "would all suggest that . . . there is a high likelihood that the material was benzene-containing." Herrick Tr. at 126:1-9. He then testified that his reference to "benzene-containing" meant "an ingredient that was . . . intentionally incorporated . . . and that would be . . . partly based on the evaporation rate." Herrick Tr. at 126:19-24. This is in contrast to trace contaminants resulting from the commercial refinery manufacturing processes for solvents. Herrick Tr. at 126:11-17.

Herrick agreed that the term "general purpose" cleaning solvent does not by definition inform as to whether benzene is present as a contaminant in the solvent or whether benzene was present as an added ingredient; and that it would be necessary to know what the constituents of the solvent were in order to be able to know what percentage, if any, was in the benzene product. Herrick Tr. at 132:11-24. In addition, Herrick understood that the benzene-containing products manufactured by Handschy were tinted so that they could be differentiated in the market. Nevertheless, Herrick arbitrarily – and conveniently – disregarded the record testimony identifying

the "Hanco" product as a clear liquid; and determined that Coppage and Stallings must have been incorrect in their recollections. *See* U.S. Steel's Motion to Strike at 6-7 (ECF 153).

In sum, Herrick's own admissions highlight the unreliability of his opinion that the "Hanco" product identified by Stallings contained benzene. His opinion should be stricken.

### C. Herrick Knew that the Printers in Use at the Baltimore Sun Were Letterpress And Would not Have Used Any Benzene Containing Product

Herrick understood the difference between offset printing and letterpress printing[7]. Herrick Tr. 115:5-8. He knew the presses at News American and Baltimore Sun were letterpress not offset. Herrick Tr. 115:9-17. And he reviewed a Hancolite Glaze Cleaner MS-408 data sheet, expressly identifying the Hancolite Glaze Cleaner as one intended to be used for offset printers as a glazed lacquer and dried ink remover. Herrick Tr. 115:20-24. After reviewing the document; other than vaguely stating that the product description would not be "quite so conclusive" because "over the years of doing this stuff, you know, I find that people tend to use what they think works and what's effective at the lowest price" he could not offer anything to dispute that the Hancolite Glaze Cleaner would not have been used at News American and Baltimore Sun; and he knew of no Handschy document – because none exists – that states that Hancolite Glaze Cleaner is to be used in letterpress printing. Herrick Tr. at 126:7-13.

Because Herrick cannot testify to a reasonable degree of certainty that any of Handshy's benzene-containing products were used by Coppage, he should be excluded from testifying.

---

[7] Herrick testified that he understood that letterpress printing used raised letters whereas offset printing uses plates that have an image on them. Herrick Tr. at 118:6-11.

9

**D.   It is Irrefutable that the Benzene-Containing Products Manufactured by Handschy Were Highly Explosive and Would Not Have Been Stored In or Near Pressrooms**

As demonstrated by the evidence considered by Herrick, the solvents, alleged to have injured Coppage, were general purpose cleaners rather than specialty products; they were clear in color; and they were stored in 55-gallon drums at the Baltimore Sun (in the ink room) and at News American (in the pressroom).  Graham Affidavit at para. 20.   In contrast, the benzene-containing products manufactured by Handschy all had low flashpoints – meaning they would have created a high risk of explosion if stored near equipment that generates heat during operation. Graham Affidavit at para. 20(b).  A newspaper press is an extremely large piece of equipment which emits heat during its operation.  *Id.*  The newspaper pressrooms at News American and at the Baltimore Sun had multiple presses, each emitting heat during operation. *Id.* Pressrooms are not spark-free environments. *Id.*  And, a single spark generated from the operation of the presses creates a risk of explosion if a low flashpoint solvent is present near the equipment or in an adjoining area.  *Id.*

Herrick understood that the that the Material Safety Data Sheets ("MSDS") for Hancolite Glaze Cleaner unequivocally state that the produce has to be stored in a cool, dry place, away from any heat source.  Herrick Tr. at 106:11-19.  He knew that Coppage and/or Stallings testified that the 55-gallon drums of solvents were stored in the pressroom next to the presses and were there during the press operation.  Herrick Tr. 106:21-24; 107:1-7.  Herrick testified, in agreement, that "it would not be best practice to store a 55-gallon drum of a solvent that has less than a 20 degree Fahrenheit flash point and warnings that the solvent is highly explosive and highly flammable, in a pressroom right next to presses in operation and generating heat."  Herrick Tr. at 108:15 – 109:8.  Herrick's testimony should be excluded.

## CONCLUSION

For all of the reasons stated herein, and any others that may appear just and proper, Moving Defendants request that the Court grant this motion and exclude Robert Herrick's testimony and expert report from this case.

Dated: December 23, 2019						Respectfully submitted,

								KUTAK ROCK LLP


							By: */s/ Deborah C. Prosser*
								Deborah C. Prosser, *admitted pro hac vice*
								777 South Figueroa Street
								Suite 4550
								Los Angeles, CA 90017-5800
								Phone: (213) 312-4005
								Jennifer M. Blunt, #09496
								1625 Eye Street, Suite 800
								Washington, DC 20006
								Phone: (202) 828-2421

**CERTIFICATE OF SERVICE**

I certify that on December 23, 2019 the foregoing document was filed through the ECF system with the Court and served via electronic mail on the following parties:

| | |
|---|---|
| Andrew J. DuPont<br>adupont@lockslaw.com<br>Timothy A. Burke<br>tburke@lockslaw.com<br>Locks Law Firm<br>601 Walnut Street, Suite 720E<br>Philadelphia, Pennsylvania 19106<br>Counsel for Plaintiff<br><br>Steven J. Nolan<br>snolan@sgs-law.com<br>Smith, Gildea & Schmidt, LLC<br>Co-Counsel for Plaintiff | Matt Cairone<br>mcc@caironelawfirm.com<br>The Cairone Law Firm PLLC<br>PMB 58<br>1900 Main Street, Suite 107<br>Cannonsburg, PA 15318<br>and<br>Laura Basem Jacobs<br>ljacobs@budownoble.com<br>Thomas F. Stowe<br>tstowe@budownoble.com<br>Law Offices Budow and Noble, P.C.<br>Twinbrook Metro Plaza<br>12300 Twinbrook Parkway, Suite 540<br>Rockville, Maryland 20852<br>Counsel for United States Steel Corporation |
| Jonathan A. Singer<br>Jon.singer@nelsonmullins.com<br>Nelson Mullins Riley & Scarborough LLP<br>100 S. Charles Street, Suite 1200<br>Baltimore, Maryland 21201<br>and<br>Eric P. Weiss<br>eweiss@murchisonlaw.com<br>Murchison and Cumming LLP<br>801 S. Grand Ave., 9th Floor<br>Los Angeles, CA 90017<br>Counsel for FUJIFILM Hunt Chemicals U.S.A., Inc. | Stephen S. McCloskey<br>smccloskey@semmes.com<br>Paul N. Farquharson<br>pfarquharson@semmes.com<br>Matthew J. McCloskey<br>mmccloskey@semmes.com<br>Semmes, Bowen & Semmes<br>25 South Charles Street, Suite 1400<br>Baltimore, Maryland 21201<br>and<br>Steven Lucks<br>slucks@fishkinlucks.com<br>Andrew Fishkin<br>afishkin@fishkinlucks.com<br>Damien H. Weinstein<br>dweinstein@fishkinlucks.com<br>David Lodge<br>dlodge@fishkinlucks.com<br>Fishkin Lucks LLP<br>One Riverfront Plaza, Suite 410<br>Newark, New Jersey 07102<br>Counsel for Union Oil Company of California and Ashland, LLC |

| | |
|---|---|
| Joseph Duffy<br>Joseph.duffy@morganlewis.com<br>Morgan Lewis & Bockius LLP<br>300 South Grand Ave., 22nd Floor<br>Los Angeles, CA 90071<br>and<br>Aaron N. Arthur<br>aaron.arthur@morganlewis.com<br>Morgan Lewis and Bockius LLP<br>1701 Market St.<br>Philadelphia, PA 19103<br>and<br>Steven A. Luxton<br>Steven.luxton@morganlewis.com<br>Morgan Lewis & Bockius LLP<br>1111 Pennsylvania Ave. NW<br>Washington, DC 20004<br>Counsel for Phillips North America LLC f/k/a Philips Electronics North America Corporation | Benjamin D. Schuman<br>ben.schuman@dlapiper.com<br>John R. Wellschlager<br>John.wellschlager@dlapiper.com<br>Darryl Tarver<br>Darryl.tarver@dlapiper.com<br>John E. Griffith, Jr.<br>john.griffith@dlapiper.com<br>DLA Piper LLP<br>The Marbury Building<br>6225 Smith Avenue<br>Baltimore, Maryland 21209<br>Counsel for BASF Corporation<br><br>Thomas J. Cullen, Jr.<br>(tjc@gdldlaw.com<br>Ericka L. Downie<br>edownie@gdldlaw.com<br>Goodell, DeVries, Leech & Dann, LLP<br>One South Street, 20th Floor<br>Baltimore, Maryland 21202<br>Co-Counsel for BASF Corporation |
| Kyle LeClere<br>Kyle.leclere@btlaw.com<br>Kevin Rising<br>kevin.rising@btlaw.com<br>Barnes & Thornburg LLP<br>11 South Meridian Street<br>Indianapolis, IN 46204-3535<br>and<br>Linda S. Woolf<br>lsw@gdldlaw.com<br>Constantine Themelis<br>cthemelis@gdldlaw.com<br>Goodell, DeVries, Leech & Dann, LLP<br>One South Street, 20th Floor<br>Baltimore, Maryland 21202<br>Counsel for Flint Ink Corporation | Jeffrey R. DeCaro<br>jdecaro@decarodoran.com<br>Adam D. Perrelli<br>aperrelli@decarodoran.com<br>DeCaro Doran Siciliano Gallagher & DeBlasis LLP<br>17251 Melford Boulevard, Suite 200<br>Bowie, Maryland 20715<br>Counsel for T.H. Agriculture and Nutrition, LLC and Hacros Chemicals, Inc. |
| Theodore F. Roberts<br>tfroberts@venable.com<br>Scott M. Richmond<br>srichmond@venable.com<br>Venable LLP<br>210 W. Pennsylvania Avenue, Suite 500<br>Towson, Maryland 21204<br>Counsel for Varn International, Inc. | Brendan H. Fitzpatrick<br>bhfitzpatrick@goldbergsegalla.com<br>Thomas Bernier<br>tbernier@goldbergsegalla.com<br>Jessica P. Butkera<br>jbutkera@goldbergsegalla.com<br>Goldberg Segalla LLP<br>One North Charles Street |

| | |
|---|---|
| | Suite 2500<br>Baltimore, Maryland 21201<br>Counsel for EMCO Chemical Distributors, Inc. |
| Daniel Herbst<br>dherbst@reedsmith.com<br>Reed Smith LLP<br>1301 K Street, N.W.<br>Suite 1000 – East Tower<br>Washington, D.C. 20005<br>and<br>Joshua Peles<br>jpeles@reedsmith.com<br>Reed Smith LLP<br>1717 Arch St. Ste. 3100<br>Philadelphia, PA 19103<br>and<br>Stan Perry<br>sperry@reedsmith.com<br>Reed Smith LLP<br>811 Main St. Ste. 1700<br>Houston, TX 77002<br>Counsel for Shell Oil Company and Shell Oil Products US, Inc. | Thomas J. Cullen, Jr. (tjc@gdldlaw.com)<br>Erica W. Magliocca (ewm@gdldlaw.com)<br>Ericka L. Downie (edownie@gdldlaw.com)<br>Goodell, DeVries, Leech & Dann, LLP<br>One South Street, 20th Floor<br>Baltimore, Maryland 21202<br>Counsel for Sun Chemical Corporation and Rycoline Products, Inc. |

By: */s/ Jennifer M. Blunt*
     Jennifer M. Blunt