THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LORENE G. BROCIOUS, *as Personal Representative of the Estate of* JAMES COPPAGE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.:1-18-cv-03823-SAG |
| UNITED STATES STEEL CORPORATION, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS GRAPHIC PACKAGING INTERNATIONAL, LLC AND HANDSCHY INDUSTRIES LLC'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE PLAINTIFF'S EXPERT ROBERT HERRICK**

Defendants Handschy Industries, LLC ("Handschy") and Graphic Packaging International, LLC ("Graphic Packaging") (collectively the "Moving Defendants") submit this Reply (the "Reply") in Further Support of Their Motion to Exclude Plaintiff's Expert Robert Herrick (the "Motion"). In addition, Moving Defendants adopt and incorporate by reference the arguments made by U.S. Steel in its Reply to Plaintiff's Opposition to U.S. Steel's Motion to Exclude Robert Herrick ("U.S. Steel's Reply") [ECF 175].

**INTRODUCTION**

The proponent of expert testimony must prove its admissibility by a preponderance of the evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993). Plaintiff has failed to do so concerning Robert Herrick ("Herrick"), identified as an expert to testify on the alleged cumulative exposure of the decedent, James Coppage ("Coppage"), to the defendants' products in this action. Herrick admittedly did not "see enough information in the record" to be

able to "testify, to a reasonable degree of scientific certainty" that the Hanco solvent identified by Stallings at News American and at the Baltimore Sun was one of the four Handschy products that had benzene as an added ingredient. [Herrick Tr. at 127:22-128:1-10]. *See* Motion, Exhibit 1, [ECF 178-1]. Instead of addressing this fatal flaw in any meaningful way, Plaintiff raises unsupportable arguments for why she believes Herrick was correct to assume that Coppage used a benzene-containing product manufactured by Handschy.

Moving Defendants have demonstrated that the only product purported to have been included in Herrick's calculations and manufactured by Handschy is a solvent identified only as "Hanco." The Hanco solvent, in turn, fails to match the qualities of any Handschy product containing 50% or more benzene. Plaintiff has not rehabilitated Herrick's unreliable and inadmissible cumulative dose opinion. The Court should exclude his testimony and report.

## ARGUMENT

### A. It is Indisputable that the Solvent Identified by Coppage and Robert Stallings did not Contain Benzene

Former Handschy employee and President, Charles Graham ("Graham"), through his Affidavit in support of the Motion (the "Graham Affidavit[1]"), demonstrated that the Handschy products named in this case were manufactured and marketed as colored or tinted products as a way to differentiate those products in the marketplace (Graham Affidavit at para. 2(a)), and that this practice was used by Handschy from the outset of its formation and throughout the time that Graham was employed there. Conversely, the undisputed facts in the record are that the Handschy

---

[1] Exhibit 2 to the Motion [ECF 178-2].

solvent allegedly used by Coppage and referred to only as "Hanco[2]" by Robert Stallings ("Stallings") was a clear and colorless liquid.

Plaintiff fails to controvert the key factual issue that *Coppage directly testified that the product he used at the Baltimore Sun and other newsrooms was clear and colorless* as follows:

Q: At the Baltimore Sun Calvert Street location, *can you tell me the color of the solvent that you used in the pressroom?*

A: *Pretty clear.*

Q. Okay. *Was the solvent[ ]* used in other pressrooms that we've been talking about here today[3] *always clear, or did it have different colors, depending on the pressroom?*

A. *I'd say clear.*

[Coppage Tr. at 241:21-242:1-10] *See* Motion, Exhibit 2 [ECF 178-2, pp. 23-24]. This puts to rest any suggestion that Coppage meant anything other than clear *and colorless* when he was asked straightforwardly if the solvent was clear, as distinguished from a solvent with color.[4] Plaintiff's argument that this factual issue is open for debate should be rejected.

---

[2] Plaintiff mislabels the Handschy product that was present at News American and at the Baltimore Sun by referring to it as "Hancolite" throughout her brief. But neither Coppage nor Robert Stallings – the only product identification witnesses – ever identified a Handschy product by name. Rather, Stallings referred to the product only as "Hanco." And Stallings, as acknowledged by Herrick, never testified that the Hancolite label reviewed as an exhibit at his deposition, was the label of the product he used. [Herrick Tr. at 67:15-71:1] (Excerpt attached hereto as Exhibit A).

[3] News American was one of the "other pressrooms" about which Coppage was questioned at his deposition.

[4] Plaintiff's argument, that because some of Handschy's products were described as clear and color-tinted, the Handschy product in the instant case may not have been colorless, is meritless and does not create a factual question for the jury. *See* Plaintiff's Opposition to U.S. Steel's Motion [ECF 168, pp. 12-13]. Coppage himself testified that the Handschy solvent had no color. There could be no evidence more relevant than that.

**B.     The Handschy Product Identified by Plaintiff was Highly Flammable and Could Not Have Been the Product Used by Coppage in a Heat Intensive Press Room**

Plaintiff's attempt to point to solvent characteristics, other than flashpoint, that may be more reliable indicators of fire risks – in an attempt show that Hancolite may have been used by Coppage at Baltimore Sun and News American – is speculation. Whether or not Herrick or Plaintiff believe that there are other metrics for determining fire hazards associated with the Handschy product at issue is irrelevant. It remains undisputed that Hancolite is highly flammable and its use in a pressroom where heat is generated by the operation of the presses would have posed a substantial risk of fire or explosion.

Plaintiff further argues that the Handschy product identified by Coppage and Stallings was stored in the ink rooms at Baltimore Sun, as opposed to the pressrooms at News American; and she argues that this weakens Graham's assertion that the benzene-containing product used by Coppage could not have been the Handschy product identified by Coppage and Stallings. Again, this argument is irrelevant. Stallings affirmatively stated that the *same* Hanco solvent was used at both pressrooms. *See* Deposition Transcript of Robert Stallings at 41:10-42:16, Motion, Exhibit 2 [ECF 178-2, p. 42]. Given that Hancolite posed too great a risk of harm to be stored in the pressroom at News American; likewise, the identical Hancolite could not have been used at Baltimore Sun. Furthermore, transporting the flammable solvent from the ink room out to the pressroom, [Coppage Tr. at 296:6-13 Motion, Exhibit 2 [ECF 178-2, p. 4], would create the same dangers at Baltimore Sun.

### C. Plaintiff Cannot Demonstrate that the Handschy Product Used by Coppage Would Have Been Used with the Letterpress Printers in Use at Baltimore Sun and News American

Plaintiff argues that because some of the product information for Hancolite describes it as a solvent with "many uses," Hancolite could have been used on letterpress printers, even though Handschy's product information referred specifically to uses for cleaning offset printers which were not in use at Baltimore Sun nor News American. Plaintiff incorrectly states that the 1991 pricing sheet[5] referencing Hancolite as one intended for use with offset printers is the only piece of evidence relied upon to support Handschy's argument. Herrick also reviewed a brochure about MS-408 Hancolite, which expressly says that the product "will remove unwanted images on deep etch plates" an offset printing process. Exhibit A [Herrick Tr. at 119:13-120:2]. Herrick's testimony that it was possible that Hancolite was used by Coppage at Baltimore Sun and News American because "over the years of doing this stuff, you know, I find that people tend to use what they think works and what's effective at the lowest price" Exhibit A [Herrick Tr. at 116:11-18] is speculation. Herrick conceded there was not a single document showing Hancolite was intended for letterpress printing.

### D. None of the Plaintiff's Argument in Opposition to this Motion Satisfy the Legal Standard for the Admissibility of the Opinions of Her Expert Herrick

In sum, courts have held that "[s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiff's burden in a toxic tort case." *Mitchell v. Gencorp, Inc.,* 165 F.3d 778, 781 (10th Cir. 1999) (quoting *Wright v. Willamette Indus., Inc.* 91 F.3d 1105, 1106 (8th Cir. 1996). As the court stated in *Mitchell,* "[a]bsent supporting scientific data . . . [g]uesses, even if

---

[5] Reference to this document in the Motion should have been identified as a 1991 Distributor Net Price sheet catalog rather than an MS-408 Data Sheet.

5

educated, are insufficient to prove the level of exposure in a toxic tort case." *Id., see also Moore v. Ashland Chemical, Inc.* 151 F.3d 269, 278 (5th Cir. 1998) (finding expert testimony unreliable because expert had no information about the level of plaintiff's exposure to the chemical solution and thus could not adequately support an assertion that the levels plaintiff was exposed to were sufficient to cause adverse health effects). As demonstrated above, and in the Moving Defendants' Motion, Herrick's opinion is based on speculation, conjecture and inadequate data; it must be excluded. *See Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) and *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002).

## CONCLUSION

For all of the reasons stated herein, and any others that may appear just and proper, Moving Defendants request that the Court grant their motion and exclude, in its entirety, the expert report of Robert Herrick and preclude him from testifying at the trial in this matter.

Dated: January 21, 2020                                         Respectfully submitted,

                                                                KUTAK ROCK LLP


                                                                By: */s/ Deborah C. Prosser*
                                                                    Deborah C. Prosser, *admitted pro hac vice*
                                                                    777 South Figueroa Street
                                                                    Suite 4550
                                                                    Los Angeles, CA 90017-5800
                                                                    Phone: (213) 312-4005

                                                                    Jennifer M. Blunt, #09496
                                                                    1625 Eye Street, Suite 800
                                                                    Washington, DC 20006
                                                                    Phone: (202) 828-2421

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2020 a copy of the foregoing document was electronically filed and served via this Court's Electronic Case Filing System (ECF) upon all counsel of record.

By: */s/ Jennifer M. Blunt*
  Jennifer M. Blunt