

Deposition of:
# Robert Herrick , MD

*November 21, 2019*

In the Matter of:

# Benzene - Coppage v. U.S. Steel Corporation

Veritext Legal Solutions
888.777.6690 | cs-midatlantic@veritext.com | 215-241-1000

Page 67

ROBERT F. HERRICK, Sc.D., CIH, FAIH67

1              THE WITNESS: Yeah.
2     BY MR. CAIRONE:
3         Q.    Give me five minutes to look
4     at my notes. I might be done.
5         A.    Okay.
6             (Whereupon there was a recess
7         in the proceeding from 10:11 a.m. to
8         10:16 a.m.)
9                     - - -
10            (Whereupon the document was
11        marked, for identification purposes,
12        as Herrick Exhibit Number 3.)
13                    - - -
14    BY MR. CAIRONE:
15        Q.    I have one or two questions,
16    based on these new notes.  And, again,
17    without waiving my reservation of rights and
18    the motion to strike I put on the record
19    earlier, I'll ask you a question.
20            We've marked Exhibit 3, Dr.
21    Herrick, which is a copy of the three
22    typewritten pages of -- I think it's three.
23    Yes.  Three typewritten pages of notes that
24    you've produced this morning. And the one

Page 68

ROBERT F. HERRICK, Sc.D., CIH, FAIH 68

1   thing I want to ask you about is --
2   Stallings is Exhibit 2. You have a note
3   there.  Do you see your notes?
4           A.      I do.
5           Q.      Can you read what your note
6   says?
7           A.      Shown -- Is this the right
8   one?  Under Stallings Exhibit 2?
9                   "Shown the label of the
10  Hancolite Glaze Cleaner and says that the
11  label was on the side of the drum. Page 66,
12  1 through 10."
13          Q.      So when you read page 66 of
14  Mr. Stallings' deposition, that's what you
15  took away from that, that he said the
16  Hancolite Glaze Cleaner label was on the
17  side of the drum?
18          A.      I think that that's accurate.
19  Yeah. I don't have the deposition right in
20  front of me, but that's --
21          Q.      Well, I do.
22          A.      Okay.
23          Q.      And the question is:  "Okay.
24  Tell us what, if anything, you remember in

Page 69

ROBERT F. HERRICK, Sc.D., CIH, FAIH69

1  terms of signage, labelage, anything that in
2  terms of the 55-gallon drum is similar to
3  what you see in Plaintiff's Exhibit 2."
4           Answer:  "In addition to
5  Hanco, the other two products I mentioned,
6  they had these labels on the side of the
7  drum and on the top of the drum.  They were
8  all there. They were -- all three were about
9  the same.  And they were either taped on or
10 glued on, so they were readily visible,
11 visibly available. You had to be a blind
12 person not to see them."
13          Did you take that to be an
14 answer that he saw the Hancolite Glaze
15 Cleaner label on all three of the products
16 that he used?
17      A.    Oh, I see what you're saying.
18 No, they weren't -- I mean, I understand the
19 question. They were not all three Hancolite
20 Glaze Cleaner.  What I think was being
21 referred to in the question was some of the
22 other information that's on that label.  He
23 recognized that.
24      Q.    He recognized the Hanco name.

Page 70

ROBERT F. HERRICK, Sc.D., CIH, FAIH70

1            MR. DuPONT: Objection, form.
2  BY MR. CAIRONE:
3       Q.    Because in the context of the
4  rest of his testimony, he said, "I couldn't
5  identify the product and I couldn't identify
6  the number." We've already established that.
7  Right?
8            MR. DuPONT: Objection,
9       compound.
10           THE WITNESS: Right. What I
11      was referring to, though, is there's
12      other information on that label. And
13      my interpretation of it was that he
14      was including that. That's what he
15      was referring to.
16 BY MR. CAIRONE:
17      Q.    But you're not saying that
18 that passage from the deposition means that
19 all three of these solvents had Hancolite
20 Glaze Cleaner on it. That wouldn't -- that
21 couldn't be possible. They were made by
22 different companies.
23      A.    Absolutely. I wasn't trying to
24 imply that he was claiming all three of them

```
                                              Page 71
            ROBERT F. HERRICK, Sc.D., CIH, FAIH71
 1    were Hancolite glaze cleaner, no.
 2          Q.     Are you trying to assume from
 3    this that he was saying one was?
 4                MR. DuPONT:  Objection, form.
 5                THE WITNESS:  Well, that would
 6          have been -- that -- I would assume
 7          that, you know, since the universe of
 8          products is only three, and, you
 9          know, he had mentioned that the Hanco
10          product was one of them.
11    BY MR. CAIRONE:
12          Q.     He mentioned Hanco. Right?
13          A.     Right.
14          Q.     And it says Hanco on Exhibit
15    2. Right?
16          A.     I don't have it in front of
17    me.  I think so.
18          Q.     Have you looked at Exhibit 2?
19          A.     Sure.  But I can't remember
20    just sitting right here now.
21          Q.     But you'll agree with me that
22    in his deposition he said he could not
23    identify the product name, the Hanco product
24    name.
```

Page 116

ROBERT F. HERRICK, Sc.D., CIH, FAI116

1  Q. So that would be yet another
2  reason why, if you had looked at these
3  documents, you would have found evidence
4  that MS-408 could not have been the Hanco
5  solvent identified by Mr. Stallings at
6  News-American and Baltimore Sun from 1960 to
7  '69, because those operations were
8  letterpress. They were not offset press.
9  Correct?
10             MR. DuPONT: Form and compound.
11             THE WITNESS: I don't know
12       that I would necessarily, you know,
13       find that to be, you know, quite so
14       conclusive. I mean, over the years
15       of doing this stuff, you know, I find
16       that people tend to use what they
17       think works and what's effective at
18       the lowest price.
19             I mean, I do take your point
20       about what the company, you know,
21       mentions here as being the intended
22       use, but I wouldn't say that that
23       rules out that people use the
24       material for a slightly different

```
                                                    Page 117
          ROBERT F. HERRICK, Sc.D., CIH, FAI117
 1      purpose.
 2  BY MS. PROSSER:
 3      Q.     All right. Well, I want you to
 4  look at the exhibits to the Charles Graham
 5  Affidavit that are all attached to Mr.
 6  Adams' report.  And there's some Bates
 7  numbers at the bottom and you're going to
 8  have to scroll through until you get to
 9  H-D001996.
10              MR. DuPONT:  Do you have a
11         copy for him to look at?
12              MS. PROSSER:  No, he was given
13         the report.  So, no, I don't have it.
14         But it's part of the exhibits to Mr.
15         Adams' report.
16              MR. DuPONT:  Yeah, we
17         understand that, but he doesn't have
18         a copy in front of him and I've got
19         to use my computer.
20              MS. PROSSER:  I thought you
21         had pulled it out.  How can he
22         comment on --
23              MR. DuPONT: I have to use my
24         computer. I did you a favor. If you
```

Page 118

ROBERT F. HERRICK, Sc.D., CIH, FAI118

1     want to take a deposition using
2     documents, it's your responsibility
3     to have the documents prepared for
4     the witness to look at, not mine.
5 BY MS. PROSSER:
6     Q.   Do you understand that offset
7 printing, Dr. Herrick, is, you don't use
8 raised letters like you do on the
9 letterpress, but you use plates that have an
10 image on them?
11     A.   I do understand that, yeah.
12     Q.   Okay. I'm going to read you
13 from the exhibit to Mr. Graham's Affidavit
14 attached to Mr. Adams' report at H-D001996.
15 And it's a brochure about a Handschy
16 product. This was attached to Mr. Graham's
17 Affidavit. And it says at the top, MS-408
18 Hancolite. And it says --
19     MR. DuPONT: Counsel, you're
20     going to have to hold on for a
21     second.
22     Which Bates number are you
23     referring to?
24     MS. PROSSER: D001996. And

Page 119

ROBERT F. HERRICK, Sc.D., CIH, FAI119

1     it's part of exhibit -- Hold on.
2               MR. DuPONT:  1196?
3               MS. PROSSER:  1996. 1996.
4               So if you go to the Graham
5     Affidavit, and then you go to his
6     exhibits to that, there's an Exhibit
7     E that has to do with the 408.
8     They're all documents related to 408.
9     Are you looking for it?
10              MR. DuPONT:  Okay. I'm at
11    Bates Number 1996.
12  BY MS. PROSSER:
13        Q.    Okay, so at the very top,
14  Doctor, it says, "MS-408 Hancolite." And the
15  last sentence -- feel free to review the
16  whole paragraph, but I'm going to ask you
17  about the last sentence.
18              It says, "It," meaning MS-408
19  Hancolite, "will remove unwanted images on
20  deep etch plates."
21              Now, images on deep edge
22  plates is an offset printing procedure, not
23  a letterpress printing procedure. Correct?
24              MR. DuPONT: Form, lacks

Page 120

ROBERT F. HERRICK, Sc.D., CIH, FAI120

1  foundation.
2              THE WITNESS:  Sure.  Yes.
3  BY MS. PROSSER:
4      Q.    Okay. So that is yet another
5  reason that MS-408 could not have been the
6  Hanco solvent that is identified by Mr.
7  Stallings because, according to the
8  documents for Handschy, MS-408 was an offset
9  printing chemical.  Correct?
10             MR. DuPONT:  You're
11         misrepresenting what this document
12         says.
13             THE WITNESS:  I'm just trying
14         to, you know, look through, you know,
15         the range of information.  And at the
16         head of this, you know, product
17         description, it says, "A powerful
18         combination of solvents with so many
19         uses that not to have it available
20         means frustration and loss of time."
21             So I try, you know, to kind
22         of, you know, take this information
23         for what it's worth.  And, you know,
24         it looks to me like the company, you